## JOHN HOWE v. JOHN T. MYERS.

Eastern Section.   March 27, 1926.

No petition for Certiorari was filed.

1. **Husband and wife. Alienation of affections. Evidence held to justify a verdict for plaintiff.**

Where evidence showed that the defendant was responsible for leading astray and debauching plaintiff's wife, held that although the evidence showed at the time of the trial she was of such a character that no decent man would associate with her, the plaintiff was entitled to substantial damages.

2. **Appeal and error. Objection to testimony must be made at the time of the trial.**

During the trial objections to testimony were made in a general manner and did not specify any particular objection, held that the objections were too general and would not be considered by the Appellate Court.

3. **Trial. A general objection to evidence is good only when the evidence is incompetent for any purpose.**

If the evidence is objected to only by a general objection and the evidence is admissible for any purpose, the trial court will not be held in error in overruling the objection.

Appeal from Circuit Court, Hamilton County; Hon. Oscar Yarnell, Judge.

Affirmed.

Wilkerson & Hyde, of Chattanooga, for plaintiff in error.

Harry F. Newton and Sam H. Ford, of Chattanooga, for defendant in error.

SNODGRASS, J.   This is an action for damages for alleged alienation of the wife's affections.   The amount claimed in the declaration was $15,000, and there was a verdict and judgment in favor of the plaintiff below for $5,000.   A motion for a new trial was entered, and on being overruled defendant below was allowed an appeal on condition that he execute a bond.   He sought to comply by simply filing the oath for poor persons.   At a former term of this court on motion the cause was stricken from the docket, whereupon the appellant filed the record and obtained a writ of error on September 21, 1925, and the cause is thus brought to this court for determination.   The parties will be hereinafter referred to as they were styled below.

The declaration contains two counts, which substantially aver that on the 16th day of May, 1908, the plaintiff, John T. Myers, was legally married to Miss Louise Bohnette, who was, after said date, the true

and lawful wife of the plaintiff, whose conjugal society, company, affection and support the plaintiff was entitled to enjoy, and was enjoying; that plaintiff's wife was at all times during her married life a very happy, dutiful and devoted wife, and at all times ready to make their home happy and pleasant, and that it was this kind of a relationship the plaintiff enjoyed with his wife until about three years ago (the declaration filed May 3, 1924) when plaintiff's wife met and formed an acquaintance with the defendant, John Howe, who soon thereafter resorted to various plans and schemes to entice her affections from him, intending to injure plaintiff and deprive him of the society, companionship, consortium, comfort and support of said Louise Myers, thereby intending to alienate, and did alienate, poison and destroy her affection for him, and averred that by use of money, valuable gifts, diamonds, etc., persuaded, overcame and overreached plaintiff's wife, and induced her to become intimate with the defendant, and thus carry on and engage in acts of lewdness and immoral conduct with the defendant, intending to destroy, and did destroy, the union of marriage and the marital relations existing between the plaintiff and the said Louise, his wife.

The declaration further averred that the conduct on the part of the defendant began about three years ago, and has been kept up ever since; that such conduct is now going on and kept up before and since the filing of this suit, and during the last twelve months preceding the filing of this suit.

The declaration averred that as a result of the plaintiff's marriage two children had been born, Emily Bohnette and Caroline, aged fourteen and eighteen years, respectively; that his wife had been a good mother and a true and faithful wife until her association with the defendant, who enticed her away from him, and by reason of the unlawful acts and conduct of the defendant plaintiff's home and family have been wrecked and destroyed; wherefore he sues for the sum of $15,000.

There was a plea of not guilty, and the cause, as stated, was heard before the judge and jury with the results indicated.

The first five assignments of error can be effectively disposed of in a consideration of the first. They are:

"1. There is no evidence to support the verdict and judgment."

"2. The verdict and judgment is against the greater weight of the testimony."

"3. The verdict is contrary to the charge of the court."

"4. The verdict is contrary to and against the law and the evidence."

"5. The damages found by the jury are excessive, showing intemperance, passion and partiality on the part of the jury."

The only evidence heard on the trial of this cause was introduced by the plaintiff. Part of such evidence was a record of the divorce proceedings that had previously been made in the same court on a petition of the plaintiff, and an amended petition which charged his wife with adultery with the defendant, and which showed that the plaintiff had been allowed a divorce and had been given the custody of the two little girls.

The record discloses a wretched chapter of the debauchery of the plaintiff's wife by the defendant, and the moral degredation to which people can descend. The record shows that the plaintiff worked for the railroad, was a locomotive engineer in the yards, and had been working for the said road for twenty-two years; that he had made a little home and was married to his wife in 1908, and that the two children were born to them as alleged; that they had a happy and contented home; that he worked at night from 10.30 until 6:30. He testified that he loved his wife that she was a dutiful wife and looked after his home and his children, but that about 1920 she became negligent of her home and about the children, and went out lots; that they were separated some six or seven weeks, but that she came back and they were reconciled and she promised to do better; that they lived together until September, 1923; that after she came back she continued negligent and would go out a lot, and didn't stay at home hardly at all, sometimes leaving the children to the care of young girl relatives, one of whom also testified to her delinquency with the defendant; that he afterwards learned she was out with the defendant; that he had had previous suspicions, but did not learn of her adultery with him until after the filing of the original bill; that since the divorce he had seen the defendant and his former wife together after dark on Sixth Street, in an automobile parked in a dark place; that before this his wife had a pearl necklace, which she told him was a cheap necklace that she had gotten at a ten cent store; that his little girl, Emily, came home with a diamond ring, and his wife told him his little girl received it from her grandfather (the wife's father) and that his wife told him that she loved Howe better than anybody on earth, and that his wife had admitted in court that she was guilty of adultery with the defendant.

It was proven by a brother of the plaintiff, who seemed to be a pal of the defendant and a go-between in the almost unbelievable circumstances of this association between the defendant and the plaintiff's wife, that notes had been delivered to plaintiff's little daughter for her mother by defendant; that he had seen the children at Howe's store at numerous times; that he was, or had been, closer to the defendant than he was to his brother; that he knew of Howe committing adultery with the plaintiff's wife; that Howe showed him a diamond ring that was given to Emily by defendant, and that he

heard Howe and the plaintiff's wife tell Emily to tell her father that her grandfather in Cincinnati sent it; that defendant gave his brother's wife a pearl necklace; that he had often called up his brother's wife over the telephone for defendant, and then turned the 'phone over to him; that this was about every time he was in there; that right up to the time of the bringing of this suit; on an occasion he and a girl, plaintiff's wife and defendant Howe were on the Gun Barrel Road about five or six miles out in the country, and that late at night, in a dark and secluded place, they got out of the car, he and the woman with him went one way, and defendant and plaintiff's wife another; that he had taken dinner with defendant and plaintiff's wife at the Grand Hotel; that Howe gave her two diamonds worth from eight hundred to fifteen hundred dollars; that he, the plaintiff's wife, the two children and Howe made a trip to Atlanta; that Howe, with the woman and the kids, left on number 3 about 3:00 in the morning on a sleeper, that he left about 5:30 on the local the next morning; that Howe met him at the station in Atlanta, and that they met the plaintiff's wife at a drug store up town; that the children were not with her; that they went to a hotel and registered; that defendant and plaintiff's wife registered as man and wife; that he went to their room after they were registered and the woman was partly undressed; that they stayed all night at the hotel, and that defendant had registered in the name of Howard or Howell; that they had gone there by pre-arrangement; that the next morning they sent a taxi for the children, and that defendant paid the bills, as he seems to have done also on other occasions.

But why pursue this wretched story further? The main defense seems to be as to the amount of the judgment, it being insisted that the woman had been shown of such a character as that it was a good riddance to be relieved of her; that the plaintiff was shown for some weeks while living with his wife to have been afflicted with a venereal disease. This he admits, but says he had had no intercourse with other women, the inference being that he caught it from his wife. This is about the only thing shown that would reflect seriously upon him, and if his explanation is correct he is more to be pitied than censured. It is true he was shown to have himself and the children ridden with defendant in his car after his suspicions had been aroused, but it was with others also, and under circumstances which he could not well avoid, and in the twilight zone of the relationship when he was not called upon to make a scence. It would be small wonder if this kind of an association had communicated such a disease to the wife, and, as she does not seem to have complained, this may be regarded as somewhat corroborative of its origin. At least his forgiveness and toleration of her indicates his affection for

her, and no doubt the appeal of his children, were weighty considerations mitigating any criticism which may have been thought justified. At least he is not shown to have been a ladies' man, nor from this record is the debauchery of his wife traceable to any other source than to the defendant.

The argument is somewhat far-fetched that would say, after I have debauched your wife and have made of her good name such a monstrosity that she has become such a good riddance as that you should have but a nominal sum in damages for the results of the handiwork which seems to be all the defendant's own. The finding of the jury is abundantly justified by the evidence.

The second assignment is not available here, and, if it were, the whole five are without merit, and are overruled.

Assignments six and seven are as to the alleged errors in the admission of evidence. We do not think there was any error committed in either case. The assignment does not point to the pages of the record that set out the questions upon which it is predicated. Recurring to the record we find that the exception started with an objection to a statement as to what the little girl was alleged to have said, as follows:

"Q. Did your little girl Emily come home with a diamond ring? A. She had one, yes."

"Q. Where did she say she received it?"

Mr. Wilkerson: "If Your Honor please, I don't see what third parties who have no bearing in this suit—"

The Court: "Do you object to the statement made to him by his wife?"

Mr. Wilkerson: "And his daughter, too."

Mr. Ford: "We don't ask for the daughter's, but his wife's."

The Court: "Yes, I sustain the objection as to any statement made by the daughter, but the court is inclined to think that a statement made to Mr. Myers by his wife is competent. Have you any authority to the contrary?"

Mr. Wilkerson: "Does your Honor overrule the exception?"

The Court: "As to the statement made by the wife, I think it competent. Have you authority to the contrary?"

Mr. Wilkerson: "Not now."

THE COURT: "Very well, I will overrule the exception as to the statement by the wife."

Thereupon the question listed in the 6th assignment were propounded and an answer had to the last one, which was:

"Q. Did your wife make any admission to you as to her relations with Howe? A. She told me she loved him better than anybody on earth, that is all."

Mr. Wilkerson: "I except to that, may it please the court."

The Court: "Overrule the exceptions."

The foregoing is the extent and character of the exceptions to the testimony. They were nowhere renewed in any explicit form, but were assigned as grounds for a new trial. We think, under the holdings of this court, the objections to the testimony were too general to place the court in any error in overruling them; and if the objections were not abandoned, it does not appear that any exceptions were taken at the time of the ruling of the court.

"In order that the ruling of the court below on the admission or exclusion of evidence may be assignable as error, objection must be made in such lower court at the proper time, and an exception to the court's ruling taken and saved." Ency. Digest. Vol. 5, page 356, citing Sahlien v. Bank, 90 Tenn., 221; Insurance Co. v. Scales, 101 Tenn., 627; Williams v. State, 3 Heisk., 376, and other cases.

"In accordance with the rule that the court of errors may intend everything which the record will permit in support of a judgment, but can imply nothing in order to reverse, and that the plaintiff in error must place his cause in such a situation as to show that the decision is erroneous, the record must show that he objected to incompetent evidence, or moved that the jury should be instructed as to its proper character and application, and that, upon the overruling of the objection, or giving of different instructions, he excepted to the opinion." Ency. Digest, Vol. 5, page 356, citing Betts v. Demumbrune, Cooke, 39.

If the evidence had been incompetent for any purpose, and general objection on the ground of incompetency made, coupled with an exception to the ruling of the court upon the exceptions, it might have been sufficient, had there been any evident prejudice thereby, and had this confessed change of affection from him been as a matter of fact incompetent. But the wife's statement that her little girl had gotten a diamond ring from her grandfather could not have prejudiced the defendant, we think. It had a tendency to contradict the proof otherwise appearing, that the ring had been given to the child by the defendant. But we think her admission of her ardent regard for the defendant could not have added weight to the abundant proof otherwise appearing as to how she had yielded herself to his complete and utter debauchery, and that under the statute (Shannon's Code, section 6351a1) this should not be regarded as reversible error.

Practically the same and even more can be said as to exception No. 7, relating to the admission of evidence. The questions set out as objectionable begin on page 24 of the record, and relate to the time of his wife's leaving, and what occurred at the station. The point where this detail was interrupted with an objection was at this question:

"Q. Did she tell you she was on her way with the children?"

Mr. Wilkerson: "May it please the court, if I understand this right, this all took place long after he claims her affections were alienated from him. It seems the testimony is going too far."

The Court: "Ordinarily anything that happened after he brought the suit is not competent."

Mr. Ford: "That would be competent as a circumstance."

Mr. Newton: "This is before the suit, September 4th."

Mr. Wilkerson: "What year was it?"

Mr. Newton: "1923."

The Court: "Let him answer."

Mr. Wilkerson: "Note an exception."

The Court: "Take an exception. Go ahead and answer the question."

The foregoing is the extent of the objection and, while an exception was noted, it is to be observed that it related to a question as to her purpose with the children. Upon the objection the inquiry was abandoned in that form, and the next ·question related to what was done at the station, and not as to what was said, and there appeared no further objection. So, if it could be said that the ruling was error, it was harmless, because the question was never answered.

Upon the whole we are satisfied with the verdict of the jury, and that there was no reversible error committed. The exceptions are all overruled and the judgment of the lower court affirmed, with costs against the defendant below.

Portrum and Thompson, JJ., concur.