BUREM v. HARVILLE.   No. 1.—174 S. W. (2d) 663.

Eastern Section.   July 3, 1943.

Petition for Certiorari denied by Supreme Court, October 2, 1943.

Portrum & Portrum, of Rogersville, and Richard Armstrong, of Kingsport, for appellant.

Phillips & Phillips, of Rogersville, for appellee.

CHARLES H. SMITH, S. P. The appellant, Hal S. Burem (who was complainant below and will be so referred to hereinafter), filed his bill in the Chancery Court at Rogersville seeking an injunction to restrain

the defendant, J. O. Harville, from interfering with complainant's construction of a fence along a line which complainant alleged to be the dividing line between the adjoining properties of complainant and defendant.

It is alleged in the bill, admitted in the answer, and established by the uncontroverted evidence, that prior to his death in 1903 Henry S. Burem executed a will which he had dictated on his death bed to his son, Ap L. Burem, by which he divided his farm, containing something more than 1,000 acres of land, into three parts, and devised the northern or lower tract lying on the river to his son Ap L. Burem; the upper tract to his son J. P. Burem; and the middle tract, on which the mansion house was located, to his widow for and during her natural life, with remainder over to his son Hal S. Burem.

The widow of Henry S. Burem has died and Hal S. Burem is now the owner in fee of the middle tract devised to him in the will of his father. The northern or lower tract which is devised to Ap L. Burem is now owned by the defendant J. O. Harville.

The following rough sketch will serve to show the situation where the boundary line in dispute divides the tracts devised to Ap L. Burem and Hal S. Burem:

Beech Creek Highway extends through the Henry S. Burem lands in a northwesterly and southeasterly direction. A wide lane extends northeastwardly, at right angles, from Beech Creek Highway for a distance of about a quarter of a mile to the mansion house on the Hal S. Burem tract, and there is a gate across this lane at a point about 50 feet northeast of Beech Creek Highway.

Opposite the mouth of the lane a road, known as Edgewood Road, extends southwestwardly, at right angles, from Beech Creek Highway through that part of the Henry S. Burem lands which lie southwest of Beech Creek Highway.

At the intersection of the lane and Edgewood Road with Beech Creek Highway there was a small country village located on the lands of Henry S. Burem at the time of his death, known as Burem's Store, where a post office was kept. Northeast of the Beech Creek Highway and northwest of the lane, just about opposite the gate across the lane, there was an old mill-house, and somewhere between the mill-house and the highway there was a shoe shop. On the southwest side of Beech Creek Highway and northwest of Edgewood Road there was a tenant house, a scales, and scales lot, and on the southwest side of Beech Creek Highway southeast of Edgewood Road there was a store and a blacksmith shop.

Going southwestwardly from the gate across the lane to Beech Creek Highway the lane "flared out" with curves to the northwest and southeast somewhat in the shape of a half moon.

The dot and dash line on the sketch is that part of the boundary line located by the decree of the Chancellor which is not challenged on this appeal.

The bill alleges that at the time of the drafting and

execution of the will of Henry S. Burem no survey was made of the lands therein devised, and that the line between complainant and defendant was established by fences, ditches, gates, buildings, and other natural objects, in the following language: "I give to my son Ap Lee Burem in fee all the land lying north and west of a line to begin on the bank of Holston River off upper end of old barn field and running in a S 35 degrees direction with the fence to the long meadow in a field below old store, at the fence to turn square up the ditch to lane going from the house; then with the lane out gate around to include shoe shop across the road so as to not include stock scales or lot to lane, going towards Edgewood, thence with the lane to pine corner; then to right with church lot to Bussells fence, around with same and to Websters or Spears and around to river and to beginning."

The bill further alleges that the line in question is the line between the defendant's lands and the scale lot as set out in the original will; that complainant had repaired and erected a fence on this line where the original fence had stood; that the defendant had removed the fence erected by complainant and would tear down and remove any other fence erected by complainant on this line unless restrained by injunction. Complainant therefore prayed "that a temporary injunction issue restraining the defendant from further interfering with the complainant in the rebuilding of and repairing the line fence across the scale lot, and that at the hearing said injunction be made perpetual."

The defendant filed an answer in which he averred that by the description set forth in the original bill Henry S. Burem devised to his son Ap L. Burem, predecessor in

title to the defendant, all of the land lying north (northwest) of the lane extending from the mansion house to the highway, and all of the land lying north (northwest) of the Edgewood Road except the stock scales; and that "the actual description given in the devise is so indefinite that it cannot be definitely determined just where the testator did mean to locate the line; the description being 'with the lane out gate around to include shoe shop across the road so as not to include stock scales or lot to lane going towards Edgewood.' "

Defendant's answer specifically disclaimed any title to the stock scales but alleged that "there is a very small corner of land on the north side of the highway opposite the Burem store which has never been under fence. This boundary belongs to your defendant and is covered by the calls of his deed, and he claims title thereto, and the right to bring such small boundary under fence at any time he wishes to do so, which right the complainant denies."

And the answer further avers that: "It is noted that the only relief the complainant seeks under his bill is to enjoin your defendant from interfering with his construction of a fence. Of course to grant such relief as that will not settle anything between the parties, and since the complainant has elected to come into court your defendant *requests* that the court fix and adjudge the true line of separation between their respective lands at the point of their dispute." (Italics supplied).

The Chancellor's decree located the line which is described in the will in the following language: "Then with the lane out gate around to include shoe shop across the road so as not include stock scales or lot to lane, going towards Edgewood."

The line was located adverse to complainant's contention and complainant's bill was dismissed and he and his sureties were taxed with the costs of the cause.

The record is before us on writ of error sued out by complainant and granted by a Judge of this Court.

No error is assigned to that part of the Chancellor's decree which locates the boundary line between the properties of complainant and defendant which lie southwest of Beech Creek Highway and surround the scales and scales lot. The errors which are assigned by complainant present two questions for determination by this Court:

First: Did the Chancellor have jurisdiction to locate that part of the disputed boundary line between the lands of complainant and defendant lying northeast of Beech Creek Highway?

Second: If the Chancellor had jurisdiction, did he correctly locate that part of the disputed boundary line extending from the northeast side of Beech Creek Highway to the gate across the lane leading from Beech Creek Highway to the mansion house?

Considering the first question, complainant contends that the original bill was filed solely for the purpose of enjoining the defendant from interfering with complainant's building or reconstructing a fence on the disputed boundary line around the scales and scales lot; that defendant's answer disclaimed ownership of the scales lot but disputed the location of the fence and the right of the complainant to construct the fence upon the location claimed by complainant; and that although the defendant's answer alleged that the boundary line extending from Beech Creek Highway to the lane at the point where it passed through the gate was in dispute the Chancellor was without jurisdiction to locate that part of the

boundary line because defendant's answer was not filed as a cross-bill. Complainant further contends that under the pleadings the Chancellor had no jurisdiction to enter any decree other than a decree sustaining the complainant's bill and making the injunction permanent, or a decree dismissing complainant's bill and taxing him with the costs.

We think the Chancellor, under the pleadings, had the authority to locate the boundary line in dispute according to the intention of the testator under a proper construction of the language used in the will of Henry S. Burem.

The subject-matter of the suit is the location of a single boundary line which is described in the will as follows:

"Then with the lane out gate around to include shoe shop across the road so as not include stock scales or lot to lane, going towards Edgewood."

True, a part of this line divided complainant's and defendant's properties lying on the northeast side of Beech Creek Highway, and a part of the line divided complainant's and defendant's properties lying on the southwest side of Beech Creek Highway, but the location of the point where the boundary line reached the northeast side of Beech Creek Highway was important and we think probably necessary to locate the point where the line began on the southwest side of Beech Creek Highway and extended to Edgewood Road, so as not to include stock scales and scale lot. Certainly it was the duty of the Chancellor, under the pleadings, to locate the line around the scales and scale lot because it could not be otherwise determined whether the complainant was entitled to the injunction which he sought to prevent defendant from erecting or reconstructing a fence on a

line which the complainant claimed to be the true boundary line between his property and that of the defendant.

██ ██ We recognize the general rule that affirmative relief cannot be granted a defendant on an answer which was not filed as a cross-bill except in suits for specific performance, accounting, partition, interfering patents, relief to infants and marshaling assets. But as stated in Section 729 of Gibson's Suits in Chancery, "In Tennessee the practice is to render such a decree upon the pleadings and proof as will settle all the rights of either complainants or defendants in and to the subject-matter of the suit as against each other, and as will also settle the rights of the defendants as between themselves, in and to the subject-matter of the litigation. Our Courts so mold their decrees as to make a final and complete disposition of the entire subject-matter, determining the rights of all the parties in reference thereto, regardless of their attitude as complainants or defendants, upon the record."

██ ██ Furthermore, the complainant is not in a position to question the sufficiency of the pleadings in this Court. No demurrer to or motion to strike any part of the defendant's answer was filed in the lower Court. On cross-examination the complainant, and on direct examination the defendant, testified as to the correct location of this boundary line leading from the lane northwestwardly to Beech Creek Highway. Complainant's counsel objected to the questions propounded to defendant with reference to the location of this part of the boundary line upon the ground that they were immaterial and involved matters not in issue in this cause. The record does not show any ruling by the Chancellor on these objections and we must assume that the testi-

mony was admitted. The record fails to show any exception by complainant's counsel to the admission of this testimony and under the well-settled rule in this State the objection was waived. Sahlien v. Bank, 90 Tenn. 221, 225, 16 S. W. 373; Insurance Co. v. Scales, 101 Tenn. 628, 632, 633, 49 S. W. 743; Grace v. Curley, 3 Tenn. App. 1, 9; Howe v. Myers, 3 Tenn. App. 690, 695; Nashville Trust Co. v. Williams, 15 Tenn. App. 445, 450; Crabb v. Cole, 19 Tenn. App. 201, 208, 84 S. W. (2d) 597.

It results that complainant's assignment of error numbered I(a), (b), (c) is overruled.

Considering the second question, we find that the evidence fails to support the location of the boundary line between complainant's and defendant's properties northeast of Beech Creek Highway, as fixed by the Chancellor.

■ The location of this boundary line must be ascertained from a construction or interpretation of the language used in the will of Henry S. Burem describing the line in order to ascertain the intention of the testator as to its location. Except for a single comma there is no punctuation in the clause describing this particular line. Punctuation may be disregarded or supplied in order to reach a correct interpretation of a will. Treanor v. Treanor, Tenn. App., 152 S. W. (2d) 1038, 1040.

■ ■ Even words may be supplied or changed in order to ascertain the true intention of the testator. East and Collins v. Burns, 104 Tenn. 169, 179, 56 S. W. 830. We are of the opinion that a proper interpretation of the will and the true intention of the testator requires that the clause describing the boundary line in question, when properly punctuated and with the italicized words supplied, should read as follows:

"Then with the lane out *through the* gate *and* around to include shoe shop, *thence* across the road, so as not *to* include stock scales or lot, to lane going towards Edgewood."

It was clearly the intention of the testator that after passing through the gate the line should curve to the northwest so as to go "around" the shoe shop and include it within the boundary of the tract devised to Ap L. Burem. Undoubtedly the shoe shop was located somewhere between the mill-house and Beech Creek Highway in the angle formed by the northwest line of the lane and the northeast line of Beech Creek Highway. The record is silent as to the location of the shoe shop but counsel for complainant, in his brief, says that: "Opposite the scales-lot was the shoe-shop, on East (N. E.) side of highway and it set back from the highway and fronted on the circular entrance above described." Counsel certainly would not have made this statement in his brief without having reliable information as to the location of the shoe shop and no doubt its location can be established by competent proof. The location of the shoe shop is important because it will determine the arc of the curve in the boundary line extending from the lane gate northwestwardly to Beech Creek Highway.

The Chancellor's decree adjudges that: "The line between the lands of the complainant and the defendant emerges from the lane from the Beech Creek Road northerly to the home of Hal S. Burem at the gate, through the gate to the highway, extends thence northwesterly crossing the highway at an angle to the northeastern corner of the yard fence (or where such fence formerly stood) of a tenant house on the lands of the defendant." This describes a straight line extending northwestwardly

from the lane gate to the highway. It is evident from the language of the will that this line is not a straight line because the testator says that after passing through the gate the line shall run ''around to include shoe shop.'' The use of the word ''around'' compels the conclusion that a line running straight from the gate northwesterly to the highway would either pass through the shoe shop or pass on the northeast side of the shoe shop, and thereby leave the shoe shop partly on the lands of Ap L. Burem and partly on the lands of Hal S. Burem, or wholly on the land of Hal S. Burem, neither of which events the testator intended to occur.

The blueprint map in the record filed by complainant as Exhibit A to the deposition of Mrs. A. L. Burem appears to have been made about 1903, the year in which Henry S. Burem died. This map shows in dotted white lines Beech Creek Highway and the lane leading from the highway to the mansion house on the Hal S. Burem tract. It shows the line curving from the lane at the gate northwestwardly to Beech Creek Highway approximately as we find, from the evidence in this cause, to be the location of the boundary line between the properties of the complainant and the defendant on the northeast side of Beech Creek Highway.

To the extent indicated in this opinion the complainant's assignment of error II(1) is sustained and otherwise overruled. And to the same extent the Chancellor's decree is modified and this cause is remanded to the Chancery Court of Hawkins County, Tennessee, for reference to the Clerk and Master to hear additional proof, and, with the aid of the County Surveyor, to locate the boundary line leading from the lane gate to the Beech

Creek Highway between complainant's and defendant's properties, and to mark the same by permanent monuments.

The costs of this Court will be paid one-half by the complainant and one-half by the defendant.

McAmis and Burnett, JJ., concur.