MURDOCK ACCEPTANCE CORPORATION *v.* AARON *et al.*

(*Nashville*, December Term, 1949.)

Opinion filed Feb. 10, 1950.

Rehearing denied May 17, 1950.

TAYLOR & QUICK and JERRED G. BLANCHARD, of Memphis, for appellant.

CLIFTON & TUAL and ARMISTEAD CLAY, of Memphis, for appellee South Memphis Land Co.

J. S. EDMONDSON and J. E. MCCADDEN, both of Memphis, for appellees Patterson.

418

MR. SPECIAL JUSTICE ALBERT WILLIAMS, sitting for GAILOR, JUSTICE, delivered the opinion of the Court.

This case is before us on appeal from the Chancery Court of Shelby County, LARRY CRESON, J., where the issues were tried upon stipulations of fact. The original bill was filed by the Murdock Acceptance Corporation to have certain lots sold under a deed of trust. Ed Aaron and wife, J. A. Patterson and wife, the South Memphis Land Company, a corporation, and James W. Watson, trustee, were parties defendant.

The bill alleged that on December 17, 1946, defendants Aaron had executed to defendant Watson as trustee a deed of trust on three described city lots, to secure to complainant the payment of a demand note in the

sum of $7,523.11, executed by defendant Ed Aaron for money loaned him, and bearing the date of November 7, 1946. It alleged demand, default and complainant's ownership of the note. It was further alleged that subsequent to the time said deed of trust was recorded defendants Aaron had assigned their interest in the three lots to defendants Patterson, which equitable interest was subject to a vendor's lien in favor of the defendant South Memphis Land Company. Defendant Watson was sued by reason of his designation as trustee under the deed of trust.

The South Memphis Land Company answered admitting that defendants Aaron had assigned their interest in the lots to defendant J. A. Patterson and that such equitable interest was encumbered, as alleged, by a vendor's lien. It denied that complainant had any lien on the lots by virtue of the trust deed or otherwise, because the Aarons had received their interest in the lots from persons to whom the Land Company had contracted to sell under agreements which contained the following provisions: "Assignment: The buyer may sell or transfer this contract at any time provided payments are not delinquent and restrictions are not violated. The assignee shall succeed to all rights and liabilities of the buyer hereunder. No sale, transfer or assignment of any of the buyer's rights under this contract shall be binding on the seller until such sale, transfer or assignment is filed with and accepted in writing by the seller, and until such acceptance by the seller, the seller may treat the buyer as shown on his books as the owner of this contract for all purposes."

The Land Company admitted that it had accepted the assignments whereby the Aarons had obtained their interest in the lots and that thereafter it had accepted the

assignment of the Aarons to J. A. Patterson. Disclaiming any actual notice of the trust deed under which complainant claimed an interest in the lots, the Land Company responded that if such trust deed had been executed as alleged, the Land Company, because of the contractual provision concerning the transfer of interest, was authorized to treat defendant J. A. Patterson as owner of the contract for all purposes, notwithstanding the recording of an unaccepted deed of trust to secure the debt owed by Ed Aaron to complainant. It was said that defendant J. A. Patterson was, as against complainant, a bona fide purchaser for value.

The Land Company's answer further stated that after it had accepted the assignment of the Aarons to J. A. Patterson, it had on October 30, 1947, conveyed the said three lots to defendant J. A. Patterson, by warranty deed containing the usual covenants.

Defendants Patterson answered and adopted the statements of fact and conclusions of law set forth in the answer of the Land Company. Additionally, however, by way of cross bill they sought to have the deed of trust, executed to secure the note made by Ed Aaron, canceled as a cloud upon their title, and alternatively sought judgment against the Land Company on its covenant against encumbrances in any sum that might be decreed against them in favor of the complainant.

The trustee, Watson, filed a formal answer submitting his rights to the protection of the court.

The Aarons did not answer and suffered a judgment *pro confesso* to be taken against them.

Complainant, answering as cross defendant, asserted its position upon the law, namely that the cross complainants Patterson and the defendant Land Company, at the time the latter conveyed the lots to J. A. Patter-

son, with covenants against encumbrances, had constructive notice of complainant's interest as evidenced by the duly recorded deed of trust. It denied that the execution of the deed of trust was in violation of the contracts between the Land Company and those to whom it had originally agreed to sell the lots and denied that the Land Company was authorized to treat as persons having the right to buy the lots, whoever was shown as such on the Land Company's books, in diminution of complainant's interest under the deed of trust. It denied that cross complainants were bona fide purchasers for value, or that they had any title or interest not subject to the lien secured by the deed of trust.

The Land Company, as cross defendant, admitted the facts alleged in the cross bill and asserted reliance upon the terms of its contract with those who had assigned their interest to J. A. Patterson.

Upon these issues the following facts, among others not now material, were stipulated:

1. That on specific dates, all prior to the acquirement of any interests by either the Aarons or the Pattersons, the Land Company had made contracts containing the "assignment provision" to sell the lots in question and that these contracts were afterwards, with the consent of the Land Company, assigned to Ed Aaron, who in turn, with the consent of the Land Company, assigned his contract to J. A. Patterson.

2. That prior to Aaron's assignment to Patterson he had executed a deed of trust to complainant to secure a pre-existing indebtedness.

3. That after the registration of the deed of trust, the Land Company executed to defendants Patterson a warranty deed carrying convenants against encumbrance.

4. That prior to the Land Company's conveyance to the Pattersons neither the Pattersons nor the Land Company had actual notice of the deed of trust which the Aarons had executed to secure the debt owed complainant.

After a clear statement of the issues raised upon the law and a thorough review of the authorities relied upon by the parties, the Chancellor rendered an opinion disagreeing with the contention of the Land Company and the Pattersons that since the Pattersons had acquired their title directly by a conveyance from the Land Company, without depending on the Land Company's contract with Ed Aaron as a part of their chain of title, the recording of the deed of trust executed by the Aarons did not constitute constructive notice to the Pattersons; and therefore also with their contention that as bona fide purchasers without notice of the deed of trust, the Pattersons had, by acquiring legal title, taken their whole interest free from any claim of complainant.

Although disagreeing with the Land Company and the Pattersons upon these contentions, the Chancellor did agree with them upon others that were determinative of the case in their favor, sustaining their position that the Pattersons were entitled to the protection of the Land Company's covenant against encumbrances, and that the Land Company was entitled to rely upon the clause in its contracts to sell which provided against transfer of interest without its consent and reserved to the Land Company the right to treat those who appeared upon the books as assignees of its contracts as the persons entitled to purchase the lots and require warranties.

Upon this conclusion a decree was entered dismissing complainant's bill and canceling the deed of trust as prayed in the cross bill.

Besides general assignments of error against the decree dismissing the original bill and sustaining the cross bill, complainants here particularize their disagreement with the Chancellor's conclusion by assigning error upon his failure to hold that as between complainant and defendants Patterson, complainant's equitable interest is superior; upon his holding that the recorded deed of trust, if efficacious, evidenced such an interest that the Land Company would incur liability under its covenant against encumbrances; upon his holding that the deed of trust securing complainant was a transfer of interest within the terms of the original contract to sell; upon his holding that the Land Company would be ultimately liable if complainant could assert rights against the Pattersons under the deed of trust; upon his failure to find the defendants Patterson negligent in not taking note of the deed of trust; and in failing to hold that negligence attributable to the Pattersons afforded the defendants Aaron an opportunity to perpetrate a wrong against complainant; and finally upon the holding of the court that the deed of trust constituted such a transaction as was contemplated in the clause concerning assignments in the Land Company's contracts to sell.

It is the contention of complainant that the Chancellor should have decided the issues between complainant and the Pattersons without reference to the plight of the Land Company, and that "having found that as between Patterson and complainant, complainant's lien is an encumbrance on the lots," the court should not have gone further "to examine the question of liability of South Memphis to Patterson under its covenant against encumbrances."

██ ██ This seems to be answered easily enough if it turns out that the Land Company, in event of the judg-

ment sought by complainant, would be liable to the Pattersons upon its warranty against encumbrances, for a court of equity having all parties in interest before it will undertake to render, upon the pleadings and proof, a decree determinative of the whole controversy. *Ingram* v. *Smith*, 38 Tenn. 411; *Allen* v. *Baugus,* 31 Tenn. 404; *Burem* v. *Harville,* 26 Tenn. App. 595, 174 S. W. (2d) 663; Gibson's Suits in Chancery, Sec. 729. If the Land Company, a cross defendant, by virtue of a decree in favor of complainant against the Pattersons, will be subjected to a recovery by the latter for breach of its covenant against encumbrances executed under the terms of its original contracts, it has an interest in the matter in litigation that entitles it to have its rights adjudged and protected by a decree in this suit.

The Land Company would be subject to such liability. In its original contracts to sell it agreed that under certain conditions it would convey the lots and warrant them against encumbrances. When the conditions were complied with it did so. The parties to the original contract from which contract the Aarons, and therefore the complainant, took all their rights and interests in the lots, provided in so many words that the Land Company might do just what it did do, treat those who appeared as assignees upon its books as the persons entitled to have the lots conveyed to them with covenants against encumbrance. Whatever the respective rights between complainant and the Aarons may have been, transactions between these two could not enlarge the obligation of the Land Company nor restrict the valid advantages, opportunities, protections and privileges which it had reserved to itself under its original contracts to sell. Insofar as such conditions and reservations were valid in

the first place, they were valid as affecting the interests of those who claimed under the contracts thereafter.

It is argued that the provision against assignments should not be construed to apply to a transfer of interest by a deed of trust to secure the payment of a debt. Many well considered cases make plain the distinction between the effect of an outright assignment and the effect of a mortgage or deed of trust. *Union Nat. Bank* v. *Bank of Kansas City,* 136 U. S. 223, 10 S. Ct. 1013, 34 L. Ed. 341; *Bank* v. *Martin,* 96 Tenn. 1, 33 S. W. 565. Resulting from this distinction it has been held that a contract prohibiting assignment does not *ipso facto* forbid a mortgage or collateral assignment for the purpose of securing a debt. *Portuguese-American Bank* v. *Welles,* 242 U. S. 7, 37 S. Ct. 3, 61 L. Ed. 116, Ann. Cas. 1918D, 643; *Fortunato* v. *Patten,* 147 N. Y. 277, 41 N. E. 572.

██ ██ In the present instance, however, the language of the agreement to be construed was not limited to mere assignments but expressly included any "transfer" of "any of the buyers' rights," and in so many words provided that until a transfer of any interest was accepted in writing by the seller, it was entitled to treat the buyer shown on its books "as the owner of the contract for all purposes." This language seems to relieve us of any necessity for passing upon points of law dependent upon the distinctions between mere assignments and collateral security for debts, whether by deed of trust or otherwise. Unless the language is to be held ineffective as an effort unreasonably to restrain alienation, *Sloman* v. *Cutler,* 258 Mich. 372, 242 N. W. 735; *Cowart* v. *Singletary,* 140 Ga. 435, 79 S. E. 196, 47 L. R. A., N. S., 621, Ann. Cas. 1915 A, 1116, it would appear that its unambiguous inclusion of all conventional transfers of interest would conclude the question. It is stated as a gener-

al rule that "a provision which does not bar assignment but merely provides a method to be followed before the assignment will affect the vendor is not invalid as in restraint of alienation." 66 C. J., Vendor and Purchaser, p. 1068; see also *Nance Realty Co.* v. *Wood-Wardowski,* 242 Mich. 110, 218 N. W. 680. We do not find that the restrictions on assignment or transfer of interest in the contract now before us does unreasonably restrict alienation. The terms of the agreement were plain and so seem to put outside the present question all argument about what omitted precautions on the part of the parties might have prevented the controversy.

 The Pattersons and the Land Company acted within the provisions of this contract when the Land Company executed the warranty deed with a covenant against encumbrances. The fact that the Pattersons had notice that encumbrances existed would not preclude their reliance upon a covenant that they did not exist. This was made clear by a case wherein this court chose between conflicting authorities and adopted the rule that "Knowledge on the part of the purchaser of the existence of incumbrances on the land will not prevent him from recovering damages on account of it, where he protects himself by proper covenants in his deed." *Brown* v. *Taylor,* 115 Tenn. 1, 5, 88 S. W. 933, 934, 4 L. R. A., N. S., 309, 112 Am. St. Rep. 811. In that case the court said that the existence of a known encumbrance might be the very reason for taking a covenant within the scope of which the encumbrance was included, thereby obtaining assurance that the vendor would discharge the encumbering obligation out of the purchase money paid by the vendee.

 In the recent case of *Amos* v. *Carson,* 186 Tenn. 393, 399, 210 S. W. (2d) 677, 679, this court defined the

scope of a covenant against encumbrances, saying "such a covenant 'is one which has for its object security against those rights to, or interests in, the land granted which may subsist in third persons to the diminution in value of the estate although consistent with the passing of the fee.' 21 C. J. S., Covenants, Section 42, page 914. Such a covenant is in effect one of indemnity whereby the covenant or grantor agrees to indemnify against an outstanding adverse title, charge, burden, or interest constituting an encumbrance. It is a covenant *'in praesenti',* which if not true is broken as soon as made. *Robinson* v. *Bierce,* 102 Tenn. 428, 52 S. W. 992, 47 L. R. A. 275."

Therefore in the present case there appeared of record an apparent encumbrance evidenced by complainant's deed of trust, and there was a covenant against it, evidenced by the Land Company's deed made in compliance with its former agreement. To protect itself against an obligation thus arising, the Land Company was entitled to rely upon its defensive equities. It did so and to the protection of its rights a prejudicial dismissal of complainant's bill was necessary.

It is earnestly urged that the same rule of law which burdens complainant with the limitations and conditions which attended the Aaron's interest in the lots, also applies to the interest of the Pattersons. The interest of the Pattersons, however, does not derive from that of the Aarons, but arises because of a conveyance directly from the Land Company. It is true that such a conveyance might not have been made except for the fact of the Aarons' assignment to Patterson. But that assignment was no more than the means by which the Pattersons were enabled to trade with the Land Company. The actual trade came later and the covenant against

encumbrances was a part of it. Aarons had nothing to do with that except to put Patterson in a position where he could make it. The claim of Patterson against the Land Company is not a mere equity but is a legal right resulting from an unambiguous and enforceable contract. To protect itself against this claim the Land Company relies upon the terms of the same contract from which complainant derives its interest. As against persons so claiming it has a right to do so. The Chancellor decreed accordingly and his decree dismissing the original bill and sustaining the cross bill is affirmed. The appellant will bear the costs of the appeal.

All concur.