In re Sheryl Lynn PIGG, Debtor.

Sheryl Lynn Pigg, Plaintiff

v.

BAC Home Loans Servicing, LP, Bank of America, N.A., Belle Management Corp.[1], Defendants.

Bankruptcy No. 10–10168.
Adversary No. 10–00642A.

United States Bankruptcy Court, M.D. Tennessee.

June 23, 2011.

1. Sheryl Lynn Pigg and Belle Management have agreed that the Home Owners Association ("HOA") is the appropriate party defendant in this adversary proceeding, rather than Belle Management Corporation, and have further agreed to file pleadings to substitute the Homeowners Association for Belle Management Corporation as the relevant party defendant. Those pleadings have not yet been filed with the court so the style of this case continues to include Belle Management Corporation until appropriate filings have been made.

John C. McLemore, Garfinkle, McLemore & Young PLLC, Nashville, TN, for Debtor/Plaintiff.

Bank of America Home Loan Servicing, LP, pro se.

Holly Melinda Bishop, Wilson & Associates, Beth A. Dunning, Brentwood, TN, for Defendant.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on an adversary proceeding brought by Sheryl Lynn Pigg ("debtor") against BAC Home Loans Servicing LP ("BAC"), Bank of America, N.A. ("BofA" collectively "the

Bank"), and Belle Management Corp. ("BMC" and "HOA") seeking "to Authorize Conveyance or Compel Foreclosure and Assumption of Obligation to Pay Homeowners Association." More specifically, the debtor seeks some form of equitable relief to stop her homeowner association fees and assessments ("HOA fees") from continuing to accrue even though she permanently evacuated her condominium after the May 1 and 2, 2010 Nashville Floods. If 11 U.S.C. § 523(a)(16) makes her post-petition HOA fees nondischargeable, she seeks compel the Bank to either accept a deed in lieu of foreclosure or to instigate foreclosure proceedings to stop the HOA fees from accumulating while the Bank takes no action. BMC and the Bank contend that the court cannot force the Bank to foreclose, and the Bankruptcy Code is completely clear that post-petition HOA fees are nondischargeable as long as the debtor maintains a legal, equitable or possesory interest in the subject condominium. The following constitutes the court's findings of fact and conclusions of law.

The May 1 and 2, 2010 flooding was one of the worst natural disasters in the history of Nashville, and devastated much of the city. The calamitous flooding damaged approximately 11,000 properties.[2] Ten people died in Nashville and more than thirty died statewide. The flood caused more than $2 billion in damage in Nashville alone.[3] Many homes and condominiums submerged under the water became uninhabitable and were reluctantly abandoned leaving residents scrambling to find a place to live. This is exactly what happened to the debtor in this case. The parties stipulated to the following facts:

1. Sheryl Lynn Pigg filed a voluntary petition in bankruptcy with this court September 21, 2010.

2. At the time of the filing of the bankruptcy, she was the owner of a condominium unit (the "Unit") at 8563 Sawyer Brown Road, River Plantation Section 10, Nashville, Davidson County, Tennessee 3722Y.

3. Belle Management Corporation ("BMC") is property management company and agent for the River Plantation, Section 10 ("the HOA"), the homeowners association established under that certain Master Deed Establishing a Horizontal Property Regime of River Plantation, Section Ten, Phase One (the "Master Deed"), which is recorded in the real estate records at the Register's Office of Davidson County, Tennessee at Book 9394 Page 598, along with various attachments to the Master Deed, including, without limitation the By–Laws of River Plantation Section Ten (A Horizontal Property Regime) Nashville, Davidson County, Tennessee (the "By–Laws"), recorded at Book 9394 Page 613.1.

4. BAC/Bank of America is a secured creditor holding a properly perfected mortgage security interest in the Unit.

5. The Unit was severely damaged in the Nashville flood of May 1 and 2, 2010. The Debtor did not have flood insurance.

---

2. http://www.tennessean.com/article/20100801/NEWS01/8010353.

3. More than 2,700 businesses were affected in Davidson County alone, impacting approxi-

mately 15,000 jobs. http://www.newschannel5.com/story/14556979/remembering-the-historic-flood-one-year-later.

6. The Debtor salvaged what she could. The furniture that was destroyed was removed from the condominium. The wallboard and insulation were removed from the condominium.

7. The Debtor abandoned the property, indicated her election to surrender the property on her bankruptcy schedules and has moved to a new location. The automatic stay prohibiting foreclosure by BAC was lifted pursuant to 11 U.S.C. 362(c)(2)(C) upon the granting of the Debtor's discharge.

8. Trustee Robert Waldschmidt filed a no asset report November 25, 2010.

9. The Debtor received a discharge January 3, 2011.

10. The current value of the gutted condominium is greater than the amount due the HOA and unpaid property taxes. The Debtor has estimated the value to be $55,000.

11. The Trustee has determined there is no equity in the Unit over and above the amount owed BAC/Bank of America.

12. Acting as an agent for BAC/Bank of America, an organization identifying itself as BAC Field Services Corporation has changed the locks on the Unit and placed a notice in the front window of the Unit prohibiting entry by anyone and stating that it is protecting the property for the mortgage holder.

13. BAC/Bank of America is maintaining property and liability insurance on the Unit.

14. The obligation owed BAC/Bank of America is in default. No payment has been made on it since April 2010.

15. BAC/Bank of America is clearly within its rights to take control of the Unit and secure it. It has done that. Its Trustee PRLAP, Inc. has legal title to the property under the deed of trust.

16. The Debtor has not occupied the Unit since the date of the filing of her bankruptcy.

17. BMC has notified Debtor's counsel that HOA dues and other assessments, including the costs to collect such dues, are accumulating and the Debtor will be held liable for their payment post petition.

18. The HOA holds a properly perfected, non-avoidable, enforceable lien against the Unit for all dues and assessments owed to the HOA under the terms of the Master Deed and By–Laws.

19. BMC has not yet initiated any proceeding in a non-bankruptcy court in order to collect homeowners association dues from the Debtor.

20. BAC/Bank of America has not yet exercised any of its post-default remedies with respect to the collateral.

Almost immediately after the debtor's condominium was flooded to the ceiling of the first floor, she was referred as a "flood victim" to Garfinkle, McLemore & Young ("GMY") by the Tennessee Attorney General's office. GMY represents the debtor, *pro bono*, in the bankruptcy case, and this adversary proceeding.

The Bank sent a "Notice of Intent to Accelerate" dated June 16, 2010 informing the debtor that her loan was in default and foreclosure proceedings would be initiated if the debtor did not cure the defaults. The debtor ultimately filed her bankruptcy petition, indicating her intent to surrender the Bank's collateral. The Bank's agent, BAC Field Services Corporation changed

the locks, and placed a notice in the front window prohibiting entry, and stating the property was being protected for the mortgage holder.

The condominium is part of a subdivision called River Plantation. All homeowners in the subdivision are required to pay homeowners association fees. The HOA has notified the Debtor she is liable for all post-petition homeowners association fees. Real estate taxes continue to accumulate as well as other smaller charges such as the condominium's share of a community water supply for landscaping. The HOA has not yet, other than notifying the debtor of her liability, attempted to collect amounts due.

The debtor filed this adversary proceeding asking the court to compel the Bank to accept a deed in lieu of foreclosure or to compel the Bank to foreclose thereby cutting off any further accumulating liability for HOA fees.[4] The debtor argues that she no longer holds a legal, equitable or possessory interest in the condominium, and therefore has no post-petition liability. If however, the fees are nondischargeable, the debtor asks for equitable relief.

BMC opposes any finding that the debt is dischargeable. Further, BMC asks the court to determine that the HOA lien is superior to the Bank's lien. The Bank argues that despite the fact that the debtor was flooded out of her home, the bankruptcy code (11 U.S.C. § 523(a)(16)) makes the debtor liable for all post-petition HOA fees as long as she holds an equitable, legal or possessory interest in the condominium. Nothing in the law can require the Bank to foreclose. The Bank contends that though the law is harsh, the law is clear.[5]

## FIRST PRIORITY LIEN

■ The dues and other assessments owed by the debtor to the HOA remain unpaid, and the HOA claims a valid, enforceable, and unavoidable lien against the property for such amounts. In this case, the Master Deed does subordinate the HOA lien to security interests created by deeds of trust only in certain limited circumstances and only so long as the lender has not taken certain actions. Pursuant to Article V, Section 4(b) of the By–Laws, the lien of the HOA is subordinate to the lien of a mortgagee or deed of trust holder, until … "after the mortgagee takes possession of the property." According to the HOA, the Bank has "taken possession" under the By–Laws. The Bank disputes "possession."

■ However, the Bank stipulated:

12. Acting as an agent for BAC/Bank of America, an organization identifying itself as BAC Field Services Corporation has changed the locks on the Unit and placed a notice in the front window of the Unit prohibiting entry by anyone and stat-

---

4. The Bank of Nashville ("TBON") is a junior lienholder on the condominium behind BMC and the Bank. Counsel for TBON provided a letter to the debtor indicating TBON would release the junior lien if the Bank accepted a deed in lieu of foreclosure.

5. The Bank is the unintended beneficiary of the perfect storm of natural disaster and this legislative inequity. While the HOA fees continue to accrue against the debtor, the Bank is de-incentivized to take any action. The economics of the situation allow the Bank to sit idle and not foreclose as long as the debtor, not the Bank is liable for the HOA fees. As both BMC and the Bank admitted, the Bank receives the benefit of the HOA services such as landscaping improvements, common area maintenance, signage, and security. Meanwhile the debtor who does not even live in the flooded condominium and has tried valiantly to handle her financial crisis caused by the flood receives minimal if any benefit for fees she must pay.

ing that it is protecting the property for the mortgage holder.

13. BAC/Bank of America is maintaining property and liability insurance on the Unit.

The Bank has changed the locks, excluding even the debtor, publically posted that its agent has secured the property for the benefit of the Bank, and is maintaining property and liability insurance on the property. The court agrees with the HOA that these acts constitute taking "possession" under the Master Deed and Bylaws. The Bank lost its priority when it took possession of the Unit. Accordingly, the lien of the HOA is entitled to priority over the Bank's security interest under the Deed of Trust for amounts that became due after the Bank took possession. The court finds that the HOA's lien has priority over the Bank's lien based on the clear and unambiguous language of the parties' agreement.[6]

### CLAIMS FOR EQUITABLE RELIEF

Bankruptcy Code § 523(a)(16) provides that a debtor shall not receive a discharge for condominium fees and assessments that become due and payable after the bankruptcy petition is filed as long as the debtor or the trustee "has a legal, equitable or possesory ownership interest" in the unit. Section 523(a)(16) was amended in 2005 to broaden the exception to discharge with respect to condominium fees. Prior to the amendment, postpetition fees were dischargeable as long as the debtor did not occupy or rent the property. The legislative history of the 2005 amendment indicates Congress' intention to render postpetition condominium fees nondischargeable "[i]rrespective of whether or not the debtor physically occupies such property ... during the period the debtor or the trustee has legal, equitable, or possesory ownership interest." **H.R.Rep. No. 109–31, at 88 (2005), U.S.Code Cong. & Admin.News 2005 at pp. 88, 154.**

Congress' broadening of section 523(a)(16), no doubt the result of some special interest lobbying, could not have foreseen the world and United States financial crisis that crashed Wall Street, sunk the real estate market, and affected, to some degree, almost every American. With the real estate collapse, lenders, who otherwise have the right to do so, are choosing not to foreclose on their collateral leaving homeowners in limbo. In the case of a chapter 7 debtor who has surrendered her home in bankruptcy and been relieved of any personal liability on the mortgage, she cannot truly be given a fresh start because HOA fees are still accumulating until a lender chooses to foreclose. If the lender never forecloses, that homeowner's liability for the HOA fees continues in perpetuity. Congress' broadening of § 523(a)(16) to protect HOAs deprives the debtor of a fresh start, and thwarts the goals of the entire Bankruptcy Code. If that situation were not dire enough, it is made worse by Mother Nature.

Under Congress' current legislation, victims of natural disasters such as Ms. Pigg, would lose their homes and be required to continue to pay HOA fees for houses they no longer occupy, have surrendered in

---

**6.** The interpretation of contracts is governed by well-settled principles. "[T]he cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention as best can be done consistent with legal principles." *Petty v. Sloan,* 197 Tenn. 630, 277 S.W.2d 355, 360 (1955). "The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." *Planters Gin Co. v. Fed. Compress & Warehouse Co.,* 78 S.W.3d 885, 890 (Tenn.2002). The parties' intention are ascertained from what was "actually embodied and expressed in the instrument as written." *Petty,* 277 S.W.2d at 361.

bankruptcy, but cannot force lenders to accept by deed in lieu of foreclosure or force foreclosure. Section 523(a)(16) will require the victims of the Joplin, Missouri tornadoes[7], the late April 2011 tornadoes in the South[8], the 2011 Mississippi River flood victims[9], the 2010 Nashville Flood victims[10], and all others who have suffered loss of their home from massive disasters to be denied a true fresh start because their lenders cannot be forced to foreclose or accept a deed in lieu of foreclosure. The perfect storm of the "Great Recession" and these unspeakable natural disasters leaves debtors such as Ms. Pigg and other victims like her to suffer unbearable losses of their homes, all their belongings, and loved ones, and be denied the fresh start promised by bankruptcy. Ms. Pigg, and other like victims, suffer a wrong without a remedy.[11]

■ "Federal courts are courts in law and in equity, and a court of equity has traditionally had the power to fashion any remedy deemed necessary and appropriate to do justice in a particular case." *Carter-Jones Lumber Co. v. Dixie Distributing Co.*, 166 F.3d 840, (6th Cir.1999) (citing *United States v. Price*, 688 F.2d 204, 211 (3d Cir.1982)).[12]

---

**7.** The Joplin storm was the deadliest single twister in more than 60 years, according to National Weather Service records. The tornado left a 13–mile–long trail of destruction through the southwest Missouri city, stripping the bark from trees and smashing homes into unrecognizable rubble. 141 people were killed. Nearly 7,800 households have filed for federal disaster aid in the aftermath, the city reported. **http://edition.cnn.com/2011/US/06/05/missouri.tornado/index.html?iref=allsearch**

**8.** The outbreak affected the Southern, Midwestern, and Northeastern United States, leaving catastrophic destruction in its wake. It produced destructive tornadoes in Alabama, Arkansas, Georgia, Mississippi, North Carolina, Tennessee, and Virginia. 238 deaths in Alabama alone have been confirmed by the state's Emergency Management Agency. It was also the costliest tornado outbreak in United States history (even after adjustments for inflation), with insured damage estimated as high as $6 billion, and total damages exceeding $10 billion (2011 USD). **http://en.wikipedia.org/wiki/April_25S‰l28,_2011_tornado_outbreak**

**9.** The Mississippi River floods in April and May 2011 were among the largest and most damaging recorded along the U.S. waterway in the past century. For the first time in 37 years, the Morganza Spillway was opened on May 14, deliberately flooding 4,600 square miles (12,000 km²) of rural Louisiana to save most of Baton Rouge and New Orleans. Thousands of homes were ordered evacuated, including over 1,300 in Memphis, Tennessee, and more than 24,500 in Louisiana and Mississippi state. **http://en.wikipedia.org/wiki/2011_Mississippi_River_floods**

**10.** The May 2010 Tennessee floods were 1000–year floods in Middle Tennessee, West Tennessee, South Central and Western Kentucky and northern Mississippi as the result of torrential rains on May 1 and 2, 2010. At least 30 counties in Tennessee were declared major disaster areas by the federal government, with 52 applying to receive this status. This translates to about 31% of Tennessee being designated a major disaster area.

According to Nashville Mayor Karl Dean, damage estimates in Nashville totalled $1.5 billion not including damage to roads and bridges or public buildings, as well as contents inside buildings and residences. **http://en.wikipedia.org/wiki/2010_Tennessee_floods**

**11.** The Bank admitted that this "appears to be a case of a wrong without a remedy."

**12.** The Tennessee Court of Appeals in *Gregory v. Jenkins*, 665 S.W.2d 397 (Tenn.Ct. App.,1983) set forth the traditional maxims of equity:

Equity will suffer no wrong without a remedy. Gibson's Suits in Chancery, 6th Ed., § 11. However, he who seeks equity must do equity. Gibson's Suits in Chancery, 6th Ed., § 16. Further, equity is not limited by monetary awards and may act on the person. Gibson's Suits in Chancery, 6th Ed., §§ 10, 12. In so doing it is free to fashion its remedies in order to do complete justice.

The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs....

*Id.* (quoting *Hecht Co. v. Bowles,* 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944)). A bankruptcy court, under 11 U.S.C. § 105(a), may use its equitable powers: The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). The Sixth Circuit held that "section 105(a) grants the bankruptcy court equitable power," but has warned that such power is constrained by the provisions of the Bankruptcy Code. *Childress v. Middleton Arms, L.P. (In re Middleton Arms, Ltd. P'ship),* 934 F.2d 723, 724 (6th Cir.1991).

▮▮▮▮ The nature of equity is the "correction of the law where, by reason of its universality, it is deficient." [13] In other words, equity is obliged to acknowledge rights not recognized at law and "equity will never suffer a wrong without a remedy." *May v. Carlton,* 245 S.W.3d 340 (Tenn., 2008). While this court is not able to discharge what Congress has legislated to be nondischargeable, the court can fashion a remedy to protect this flood victim, from further accumulating HOA fees. Equity requires that the court prevent the debtor's fresh start from being completely eradicated by this legislated wrong without a remedy.

The court considered the interests of the HOA, the Bank, and the debtor in fashioning a remedy that addresses the debtor's needs but also respects the rights of the lienholders. Any remedy is constrained by the provisions of the Bankruptcy Code. *Childress v. Middleton Arms, L.P. (In re Middleton Arms, Ltd. P'ship,)* 934 F.2d 723, 724 (6th Cir.1991). The court finds, therefore, equity demands that:

1. the debtor's discharge be set aside temporarily;

2. the chapter 7 trustee, Robert H. Waldschmidt, be reappointed;

3. the Chapter 7 Trustee's Report of No Distribution be set aside;

4. the Order granting The Bank of Nashville Relief from the Automatic Stay be set aside; [14]

5. the Chapter 7 trustee shall sell the asset known as 8563 Sawyer Brown Road, Nashville, TN 37221 pursuant to 11 U.S.C. § 363 and distribute the proceeds as follows:

FIRST: The administrative expenses incurred by the chapter 7 trustee and

---

Allen v. Baugus, (1852) 31 Tenn. (1 Swan) 404; *Burem v. Harville,* (1943) 26 Tenn. App. 595, 174 S.W.2d 663, cert. denied. Equity delights in complete justice and does not accomplish it by halves. Gibson's Suits in Chancery, 6th Ed., § 15.

**13.** **Aristotle** 384–322 BC.

**14.** TBON holds a junior lien on the subject property. All parties represented to the court that TBON admitted that it was unsecured because of the loss in the property's value, and did not want to be included in this adversary proceeding. The court, therefore, finds that TBON consents to sale of the property by the trustee.

his attorney for selling the subject property, including payment of all outstanding taxes.

SECOND: The claim of the HOA for all fees and expenses covered by their first priority lien.

THIRD: All remaining monies shall be paid to the Bank to the extent of its lien.

FOURTH: Any remaining monies shall be paid to TBON to the extent of its lien.

FIFTH: Any remaining monies shall be paid the chapter 7 estate.

6. after the sale, the debtor's discharge shall be reinstated, and the trustee may be discharged.

The trustee shall sell the subject property pursuant to 11 U.S.C. § 363.[15] Section 363(f) of the Bankruptcy Code permits a trustee to sell property, under section 363(b) or (c), free and clear of any interest in such property of an entity other than the estate. See 11 U.S.C. § 363(f). However, a sale free and clear of liens may be approved only if at least one of the following five conditions are met: (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled to accept a monetary satisfaction of such interest. 11 U.S.C. § 363(f).

In this case, the court finds that the Bank and the HOA have consented to the sale by their inaction.[16] While in most cases there would be no such inference, in this case, equity demands that the court fashion a remedy that balances the rights of the lienholders and the right of a debtor to a fresh start. The Bank and HOA's inaction, despite interest by a third party-investor[17], despite pleas by the debtor for action[18], and despite the debtor's offer of a deed in lieu of foreclosure lead this court to deem consent granted by the HOA and Bank for a § 363 sale by the trustee. The Bank will receive whatever it would have received had it foreclosed upon the property, but will not have any continuing interest in the property unless the Bank so

---

15. (b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate,

. . .

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

16. See In re Gulf States Steel, Inc. of Alabama, 285 B.R. 497 (Bankr.N.D.Ala., 2002) (trade vendors "deemed" to have consented under section 363(f)(2) by provisions in an earlier trade vendors order); In re Shary, 152 B.R. 724 (Bankr.N.D.Ohio,1993) ("State's failure to object to the sale, or the confirmation of the sale, implicitly conveyed its consent to the sale as found under § 363(f)(2)"); In re Borders Group, Inc., 453 B.R. 477 (Bankr. S.D.N.Y.2011) (same).

17. The debtor furnished the name of an interested investor who had redeveloped other River Plantation condominiums to the Bank. The Bank did not respond.

18. The Bank never even sought stay relief in this case despite the debtor's pleas for some type of action.

chooses. The HOA's claim will be paid as a first priority claim behind the trustee's costs of sale. The debtor will be relieved of any further interest in the flooded property and will truly receive a fresh start. The HOA, Bank and the debtor all receive benefit from the trustee's sale of the property. The court fashions this remedy in order to do complete justice. *See Allen v. Baugus,* (1852) 31 Tenn. (1 Swan) 404; *Burem v. Harville,* (1943) 26 Tenn.App. 595, 174 S.W.2d 663, **cert. denied.**

The court, therefore, finds that the HOA's lien is entitled to priority over the Bank's security interest for amounts that became due after the Bank took possession. The court also grants, in part, the relief sought by the debtor, and dismisses all remaining claims. The court instructs counsel for the debtor, and counsel for the Bank and the HOA to confer to submit an order which most efficiently accomplishes the directives of the court within fourteen (14) days of entry of this Memorandum Opinion.