# J. A. TALLEY et al. v. MRS. NANCY BAKER et al.

Eastern Section.   May 22, 1926.

Certiorari denied by Supreme Court.   October 16, 1926.

1. **Water and watercourses. A lower landowner is charged with the duty of not obstructing a natural drainage.**

In an action to recover damages caused from overflow caused by a lower landowner obstructing a ditch, held a lower landowner is charged with a duty of not placing in a natural drainage or in a ditch which has been maintained along the course, over and in the place of a natural drainage, any artificial obstruction, and if he build a structure (such as a bridge), across the drainway, he is charged with the positive and continued duty of providing for the natural passage through such obstruction of the water which may be reasonably anticipated to drain through that channel.

2. **Easements. All lands are burdened with the easement of receiving and discharging water which naturally flows on to them.**

All lands are of necessity burdened with the servitude of receiving and discharging all waters which flow down to them from lands on a higher level; and the owner of the lower land is liable for damages when by artificial means he causes the water to overflow the higher lands.

3. **Water and watercourses. Damages. An action for damages will lie for the obstruction of the natural flow of water which arrests the drainage of another.**

A landowner, whether in country or city, has an easement for drainage of surface water in its natural flow over the lower land of a neighboring owner and if the latter places an obstruction of any character upon his land that arrests this drainage and thereby causes injury to the former, an action lies for damages.

4. **Water and watercourses. Damages. Actual damage not necessary to maintain an action for interfering with the flow of water.**

Any substantial or essential interference with the flow if wrongful, whether attended with actual damage or not, is an actionable nuisance.

5. **Water and watercourses. A party obstructing the flow of water so that it causes injury only in time of high water is liable for injuries.**

A lower riparian proprietor has no right to maintain a dam which will back water upon the upper riparian proprietor's land in time of freshets or prevent its flowing therefrom to his injury, though at ordinary stages of water such dam will not occasion any injury.

6. **Damage. Three hundred dollars held sufficient to cover damages for overflow of eight or ten acres of land.**

In an action to recover damages for overflow of land caused by defendant's obstruction of the natural water courses where the complainant's witnesses all stated that only eight or ten acres of land was overflowed and that the average rental was probably fifteen dollars an acre and defendant's witnesses placed the damages at a much less sum held twelve dollars and fifty cents an acre was a reasonable amount for plaintiff's damages.

Appeal from Chancery Court, Greene County; Hon. W. W. Belew of Johnson City, Special Chancellor.

Modified and affirmed.

J. E. Biddle, of Greenville and E. R. Taylor of Morristown for appellant.

Susong, Susong and Parvin, of Greenville, for appellee.

OWEN, J.   J. A. Talley and his two sisters were the owners of a tract of forty-three acres of land in Green county, Tennessee. They filed a bill against Mrs. Nancy C. Baker, who owned an adjoining farm to complainants. The purpose of the bill was to have Mrs. Baker remove a certain obstruction that she had placed in a certain ditch that had been the means of carrying off the water from complainant's farm and the defendant's farm and a number of other farms, which water was carried into Lick creek, and it was also alleged that by this obstruction the defendant had placed in the ditch near complainants' and defendant's dividing line, complainants' lands had been overflowed and rendered useless or untillable for several years prior to the filing of complainant's bill.   Complainant's bill was filed February 18, 1922.   The defendant denied all the material allegations of complainants' bill and insisted that the complainant had failed to clean out a portion of the ditch and if he had cleaned out his own ditch the waters would have passed off of his land and he would not have been damaged; that the filling up of the ditch through the defendant's land was the natural filling and that the defendant had done no wrong.

During the pendency of the suit the defendant died and the cause was revived against her administrator and her heirs at law.

A great number of depositions were taken, the complainants taking twenty-one and the defendant six depositions.   An immense record of two volumes consisting of more than four hundred pages of testimony has been presented to the court on this appeal.   The cause was ably argued by counsel for both parties, at the hearing, and elaborate briefs have been filed by both sides.  The Chancellor held that the defendant had placed a log in the ditch, or rather in building a bridge across the ditch on her land she had left an old sill from a former bridge in the ditch and that the new sill was placed so near to the old sill that this caused an obstruction and caused the ditch to fill up and the water would not pass through defendants land but back up over complainant's lands.   The Chancellor ordered the old sill to be removed.   It appears that this has been done, and was removed during the taking of proof in the cause.

The Chancellor also gave judgment in favor of complainant for $728.40 to cover all damages arising from the wrongs complained of in the bill for the three years immediately preceding the bringing of this suit.   The decree also ordered the bridge that had been constructed by the defendant to have a clearance of at least three feet

and six inches from the bottom of the sill to the top of the ditch, and the ditch not to be less than three feet wide at the bottom and five feet wide at the top and with an unobstructed outlet on the lower side of the bridge for the volume of water carried by the opening, and that the ditch should be thus maintained. The defendant excepted to the decree of the Chancellor, prayed and was granted an appeal to this court, and has assigned five errors, which raise three propositions:

First: That the court was in error in holding that the sill under the bridge was an obstruction to the flow of the water.

Second: The court was in error in holding that defendant's should clean out the ditch from the line between complainant and the defendant's lands to the lower side of the bridge; and,

Third: That the court was in error in holding that the defendants are liable to complainants for any damages for the overflow.

It appears that the ditch in controversy was dug by a number of farmers more than forty or possibly fifty years ago; that complainant and defendants' lands were once owned by the same landowner, W. C. Baker, who was the grandfather of complainants and the father-in-law of the defendant Nancy Baker, and the grandfather of her surviving children. Mrs. Baker owned five parts of the W. C. Baker estate, or about five times as many acres as the complainants owned. This ditch in controversy extended across the Baker farm for about one hundred and twenty rods and it was extended about one hundred rods further through the lands of ———— Fuller until it reached Lick creek; however, it appears that there were high banks to the ditch through Fuller's lands and his lands did not overflow. Mrs. Baker's lands overflowed as much from the ditch in carrying off the water as complainant's lands and she had more acreage to become overflowed than the complainant.

This cause was heard by agreement before Hon. W. W. Belew of Johnson City who sat as special Chancellor during the absence of Chancellor H. H. Haynes.

It appears from the findings that this ditch was in good condition until about 1916 and during that year there was a freshet and the bridge in controversy was washed away; and in erecting a new bridge the sill of the old bridge was left in the ditch and this soon caused the ditch to fill up between the bridge and defendant's and complainant's line, which is only a short distance from the bridge, and the natural flow of the water from rains was obstructed.

We agree with the Chancellor that Mrs. Baker failed to perform certain duties that she owed to complainants.

A lower landowner whose land is situated with reference to lands of others as that of defendants is located with reference to the lands of complainant, is charged with the duty of not placing in a natural

drainage, or in a ditch which has been maintained along the course, over and in the place of a natural drainage, any artificial obstruction, and if he build a structure (such as a bridge) across the drainway, he is charged with the positive and continued duty of providing for the natural passage through such obstruction of the water which may be reasonably anticipated to drain through that channel. 27 R. C. L., pages 1148-1149.

All lands are of necessity burdened with the servitude of receiving and discharging all waters which flow down to them from lands on a higher level; and the owner of the lower land is liable for damages when by artificial means he causes the water to overflow the higher lands. Ry. v. Hays, 79 Tenn., (11 Lea), p. 382; Ry. v. Mossman, 90 Tenn. (6 Pickle), 155-156; Davis v. Railway, 147 Tenn. 1.

A landowner, whether in country or city, has an easement for drainage of surface water in its natural flow over the lower land of a neighboring owner; and if the latter places an obstruction of any character upon his land that arrests this drainage and thereby causes injury to the former, an action lies for damages. Garland v. Aurin, 103 Tenn. (19 Pickle), 555; Davis v. L. & N. Ry. Co., 147 Tenn., 2.

Any substantial or essential interference with the flow, if wrongful, whether attended with actual damage or not, is an actionable nuisance.

A lower riparian proprietor has no right to maintain a dam which will back water upon the upper riparian proprietor land in time of freshets or prevent its flowing therefrom to his injuries though at ordinary stages of water such dam will not occasion any injury. Allan v. Thornapple Elec. Co., 15 A. L. R., 453, 27 R. C. L., p. 1101, sec. 36.

"A man may build a dam across a stream on his own land, provided that thereby he does not appreciably diminish the amount of water, which should naturally flow on to the land of his neighbor below, or materially effect the continuity of the flow." Trumlinger v. Howe, 22 L. R. A. (N. S.), 545; 27 R. C. L., p. 1101, sec. 37.

We are of opinion that the Chancellor was not in error in sustaining complainant's bill for mandatory injunction and granting the relief in regard to removing the obstruction in the ditch and cleaning out the same, which had become filled from said obstruction.

On the question of damages, we cannot concur or agree with the chancellor. There was no reference on the question of damages from the overflow. The statute of limitations had been invoked and it was properly sustained, and complainants could recover for only three years. There is proof by the complainant that the land rented for twenty to twenty-five dollars per acre, but he is not supported as to this amount. We find from the evidence of J. B. Neilson, a disin-

terested witness and an adjoining landowner of complainants that the complainants suffered about seven acres per year to be over-flowed and that the lands would not average over $15 per acre. F. P. McCorkle, another disinterested witness, and a landowner, whose lands were drained by the ditch in controversy, testified that complainants only suffered damages to a few acres each year. C. N. McCurley, another neighbor and adjoining landowner, and who also was interested in the ditch, testified that complainants had submerged each year from eight to ten acres.

These are all complainants' witnesses.

The defendant's proof is that the complainant lost very little by the overflow; that he used this low land subject to overflow from the ditch for pasturing hogs and that he kept a number of hogs in or on this low land each year.

There is always some doubt, and at least a tinge of speculation as to what rents would be received from land that was not cultivated or is subject to overflow, and we are of opinion that $12.50 per acre for eight acres per year for three years, or a total of $300 will cover all of complainants' loss or damage, and the decree of the Chancellor will be modified and reduced from $728.40 to $300 and the assignment of error on the question of damages is sustained to the extent of reducing the decree of the Chancellor to $300; otherwise the decree of the Chancellor is affirmed.

The complainants will recover of the defendants and surety on appeal bond the sum of $300 together with interest from the date of the decree in the lower court, and one-half of the costs of the appeal and also all the costs that were adjudged against the defendants in the lower court.

The defendants will recover of complainants one-half of the costs of the appeal. Execution will issue accordingly.

Heiskell and Senter, JJ., concur.