John W. BLACKWELL and wife, Cathy R. Blackwell, and William H. Latimer, III,

v.

Cecil G. BUTLER and Tom Yarbro.

Court of Appeals of Tennessee, Western Section.

July 17, 1978.

Certiorari Denied by Supreme Court Nov. 20, 1978.

Ralph I. Lawson, Dyersburg, for defendants-appellants.

John L. Warner, Jr., Union City, for plaintiffs-appellees.

SUMMERS, Judge.

Plaintiffs-appellees, John W. Blackwell, Cathy R. Blackwell and William H. Latimer, III, sued defendants-appellants, Cecil G. Butler and Tom Yarbro. Plaintiffs sought a mandatory injunction to compel the defendants to repair a breach in and remove certain portions of a levee on defendants' farm which defendants built to lessen their damage caused by unnatural concentration of surface waters along the north fork of the Obion River in Obion County.

Defendants filed an answer and counterclaim asking that one of the plaintiffs, William H. Latimer, III, be stricken as a party plaintiff because he owned no interest in the property belonging to the plaintiffs. Defendant further asked that plaintiffs be ordered to remove, push down and level all levees and fill all ditches on their property. The defendants also sought a money judgment for the loss of market value of their property because of levees and ditches that plaintiffs had built in the past.

The chancellor overruled the motion to strike William H. Latimer, III, as a party plaintiff and ordered that a mandatory injunction issue compelling the defendants to remove the levee that was constructed along the Obion River north to the point where it leaves the right-of-way of the easement of the gas company. He also ordered that defendants install a metal pipe with a flap gate in their ditch where it empties into the canal of the Obion River of a size not smaller than that in the ditch of the Blackwells where it empties into the canal of the Obion River.

Defendants appealed to this court and listed seven assignments of error. Defendants further filed a motion with this court requesting an order requiring the lower court to file as a part of the technical record discovery depositions taken of the plaintiffs, John W. Blackwell and William H. Latimer, III, and filed with the clerk and

master but were never read into the bill of exceptions or made exhibits to the bill of exceptions.

The discovery depositions were never introduced or considered by the chancellor; the plaintiffs whose depositions are now requested were placed on the witness stand and counsel had every opportunity to cross-examine them. In the matter of *Wilburn v. Vernon,* 60 Tenn.App. 436, 447 S.W.2d 382 (1969), Justice Taylor speaking on the introduction of discovery depositions stated:

. . . They were allowed the opportunity of introducing any statements made in defendants' discovery deposition which conflicted with their oral testimony given at the trial. Any other testimony could have been adduced while the parties were on the witness stand. The discovery deposition act was not passed to permit trials by deposition but to permit the ascertainment of truth by aiding a party in the preparation for trial. *Southeastern Fleet Leasing, Inc. v. Gentry,* 57 Tenn.App. 162, 416 S.W.2d 773; *Harrison v. Greenville Ready-Mix Inc.,* 220 Tenn. 293, 417 S.W.2d 48.

Therefore, this court must overrule the motion made by defendants.

The Blackwells and defendants own adjoining farms in Obion County, and both farms have as a south boundary line the Obion River. The Blackwells' farm contains approximately 432 acres and lies upstream from the farm owned by the defendants which contains approximately 330 acres. The Blackwells purchased their farm in 1974; the defendants purchased their land in 1976. In the southeast corner of the defendants' farm lies a 58.6 acre tract that was acquired from the Blackwells' predecessors in title.

The present farms owned by the Blackwells and the defendants are separated by a ditch which has been in existence for more than 20 years. The Blackwells' predecessors in title constructed ditches and levees over a period of years and at one time dammed up the end of ditches that emitted water into the Obion River. Where these ditches were dammed, culverts with flood

caps were installed. In 1975 plaintiff John W. Blackwell constructed an east-west ditch and levee and at the end of the ditch and levee installed two 12 foot culverts with flap gates.

Defendants' predecessors in title between the years 1969 and 1973 constructed three ditches on the lower farm, and cut some of the timber on the 58.6 acre tract that was formerly owned by the Blackwells' predecessors in title. O. P. King, who at one time operated the farm owned by the defendants, testified that he knew the farms owned by the parties, and "normal rains" caused no problems, but when the "river got out" the surface waters traveled southwest across both farms.

From the pleadings and the evidence it is well established that the natural flow of surface waters traveled from east to west and southward into the Obion River.

William H. Latimer, III, entered into an option contract with the Blackwells in September of 1976 to purchase the acreage owned by them for the sum of $422,000.00. Latimer, who had also been interested in buying the property owned by defendants, walked over the property and observed that during flooding the flow of surface waters was generally running from east to west and that the farm owned by the defendants was extremely wet and "later on that year was pretty well under water."

After Latimer had entered into a contract with the Blackwells to purchase their farm and had placed some $20,000.00 option money with them, he was informed that defendants were building a levee surrounding most of their farm. This levee was completed, and it is this construction that set in motion this lawsuit.

■ The third assignment of error submitted by defendants was that the court erred in overruling defendants' motion to strike Latimer as a real party in interest. William H. Latimer, III, was surely a real party in interest in the lawsuit in that he had deposited with the Blackwells the sum of $20,000.00 in option money and had the option extended until the final results of

the lawsuit were determined. Therefore, this assignment is overruled.

In July of 1977, Latimer accompanied by Mark Phipps, holder of a Bachelor of Science Degree in Agricultural Engineering, visited the farm immediately following a 1¾ inch rain. Phipps was farming the land of the Blackwells at that time and was interested in the water situation as it effected his operation. After observing the results of the rain, Phipps stated as follows:

The water will back on to us, from what I have seen. Our property seems to slope from east to west. Our east line is higher than our west line. I feel like when water does come across us in a flood situation that it is going to be stopped by their levee and backed up on it. It will be higher and will take longer to get off.

Bob Nichols, consulting engineer with Bachelor and Masters Degrees of Science in Civil Engineering with special training in hydraulics, fluid mechanics and hydrology, observed the properties in question from an airplane following a rain and stated:

Q. What is the levee doing insofar as the water is concerned?

A. Backing it up.

Q. It is backed up beyond the property line between these two properties and onto the Blackwell property?

A. Yes.

The defendants introduced two witnesses that were disinterested. The first was a William Campbell, farmer, bulldozer operator and gravel pit owner, having some 18 years experience in building farm ditches, drains and levees. He stated that he had never been on the property owned by the Blackwells, but from looking at the property from the defendants' land, it would appear to him that the levee would cause no trouble. The other disinterested witness was a Walter G. Hastings, real estate broker and farmer. Mr. Hastings testified that the levee and ditches would not effect the market value of the Blackwells property.

█ Assignments of error 1, 4, 5, 6 and 7 stated that the court erred in not holding that the Blackwells and their predecessors in title in building ditches and levees materially changed the natural flow of water or increased the volume of water that flowed on defendants' farm, thereby damaging it and causing a decline in the fair market value of the farm and creating a nuisance to defendants' property. The assignments further stated that the courts erred in permitting the plaintiffs to continue to remain leveed up, high and dry, and failed to hold that no prescriptive rights existed in favor of plaintiffs as to defendants in this cause.

The chancellor found:

8. That the plaintiffs [predecessors in title] in the early 1960's constructed a ditch and earthen levy [sic] along their western boundary line which has its beginning at or near the northern most edge of the flood plain of the river and runs south along what is now the common boundary line of the real estate belonging to the plaintiffs and that belonging to defendants and finally empties into the canal of the Obion river. This ditch and levy [sic] is also constructed across the natural flow of the water. However there are several breaks in the levy [sic] allowing the water to flow naturally through these breaks and does not materially change the flow of the water. This levy [sic] and ditch does not materially effect the use of defendants land for agriculture purposes, in that it does not materially affect the natural flow of the water or increase the volume of water that flows across defendants land. The Court is not unmindful of the fact that the defendants have constructed a ditch and levy [sic] on their western boundary identical to the one constructed by plaintiffs. Also at the point where plaintiffs ditch empties into the Obion river, they have installed a metal pipe with a flap gate on it to prohibit the water from the river backing up their ditch and onto the lands of defendants.

9. That in the later 1960's the plaintiffs [predecessors in title] constructed a ditch and levy [sic] across their land that runs east and west and runs generally with

the flow of the water and does not materially change the natural flow of the water or increase the volume of water that would naturally flow across defendants land. All of the proof, both plaintiffs and especially the defendants, is to the effect that the low point of plaintiffs land is at their northwest corner and that the land on the south side of the canal is lower and that the natural flow of the water is in that direction and away from the lands of the defendants.

We agree with the chancellor. Therefore, assignments of error 1, 4, 5, 6 and 7 are overruled.

The last assignment of error addressed to this court was that the court erred in holding that defendants' ditch and levee runs across the natural flow of the water when the Obion River is at flood stage, thereby constituting a hindrance to said natural flow which should be abated.

■ We believe the chancellor was correct when he held that the ditch and levee does run across the natural flow of water when the north fork of the Obion River is at flood stage, and as a natural consequence, the levee will retard and hinder the natural flow of the water and thereby cause the flood water to back up and stand on the real estate of the Blackwells for longer periods of time than would occur if allowed to flow naturally and unretarded.

■ There are two basic rules in regard to the natural flow or drainage and obstruction of surface waters. One is known as the civil law rule; the other is the common law or common enemy rule. It is well settled that the common law or common enemy rule does not apply in this state. See: *Slatten v. Mitchell,* 22 Tenn.App. 547, 124 S.W.2d 310 (1938).

In *Talley v. Baker,* 3 Tenn.App. 321 (1926), Justice Owen outlines the law in the obstruction of natural drainage:

All lands are of necessity burdened with the servitude of receiving and discharging all waters which flow down to them from lands on a higher level; and the owner of the lower land is liable for dam-

ages when by artificial means he causes the water to overflow the higher lands. *Ry. v. Hays,* 79 Tenn. (11 Lea), p. 382; *Ry. v. Mossman,* 90 Tenn. (6 Pickle) [157], 155–156; *Davis v. Railway,* 147 Tenn. 1 [244 S.W. 483].

A landowner, whether in country or city, has an easement for drainage of surface water in its natural flow over the lower land of a neighboring owner; and if the latter places an obstruction of any character upon his land that arrests this drainage and thereby causes injury to the former, an action lies for damages. *Garland v. Aurin,* 103 Tenn. (19 Pickle), 555 [53 S.W. 940]; *Davis v. L. & N. Ry. Co.,* 147 Tenn. [1], 2, [244 S.W. 483].

Any substantial or essential interference with the flow, if wrongful, whether attended with actual damage or not, is an actionable nuisance.

A lower riparian proprietor has no right to maintain a dam which will back water upon the upper riparian proprietor land in time of freshets or prevent its flowing therefrom to his injuries though at ordinary stages of water such dam will not occasion any injury. *Allan v. Thorapple Elec. Co.,* 15 A.L.R. 453, 27 R.C.L., p. 1101, sec. 36.

"A man may build a dam across a stream on his own land, provided that thereby he does not appreciably diminish the amount of water, which should naturally flow on to the land of his neighbor below, or materially effect the continuity of the flow." *Trumlinger v. Howe,* 22 L.R.A.(N. S.), 545; 27 R.C.L., p. 1101, sec. 37. We are of opinion that the Chancellor was not in error in sustaining complainant's bill for mandatory injunction and granting the relief in regard to removing the obstruction in the ditch and cleaning out the same, which had become filled from said obstruction.

In 1969 the predecessors in title of the defendants purchased the 58.6 acres of land, well aware that it had been a portion of the land owned by the predecessors in title of the Blackwells. They knew where the ditches and levees were located and knew

the flow of the water. It is true that in 1975 plaintiffs extended an east-west ditch and also dug a north-south ditch, but these ditches were well on the upper side of the plaintiff's property and did not affect the flow of the water on the land of defendants.

In the case of *Louisville & Nashville Railroad Co. v. Binkley,* 1 Tenn.Ch.App. 531 (1901), Justice Barton writing for the court said:

> We understand it to be well settled law that one landowner cannot so gather or obstruct the natural flow of surface water as to turn the same upon the property of an adjoining landowner in a way to injure him or destroy his property. For the defendant, however, it is insisted that the natural flow of the water is that territory was down and over the place where the complainant's tract is now situated. It is true, as we have found, that originally this was the case; but the railroad company owning all of the property had the right, if it chose to do so and if it became necessary to do so in carrying out its purpose, to entirely change the natural topography of this land. But it would not at that time have had a right to so change the natural topography as to throw the surface water that naturally came down over its land upon the lands of another; but, owning all the land at that time, it had a right to make any change in the natural surface that it desired that would not then injure an adjoining landowner, and to completely change the topography of that particular section owned by it, and it did make such change; and after that the natural flow of the water was, as we have seen, over the land now owned by the defendant, and this land was in this situation when the defendant purchased it from the complainant. . . . .

After closely studying the proof and being cognizant of the law cited and relied on by plaintiffs, assignment of error 2 is respectfully overruled.

Whereas, the distinguished chancellor showed commendable insight in the resolution of all issues, his judgment in all respects is affirmed.

The costs will be assessed to the defendants.

MATHERNE and EWELL, JJ., concur.