Truman **GREGORY** and wife, Wilma Gregory, Plaintiffs-Appellants,

v.

Hillis **JENKINS** and wife, Della Mae Jenkins, Defendants-Appellees.

Court of Appeals of Tennessee, Western Section, at Nashville.

Nov. 18, 1983.

Application for Permission to Appeal Denied by Supreme Court Jan. 23, 1984.

Thomas H. Bilbrey, Lafayette, for plaintiffs-appellants.

James W. Chamberlain, Lafayette, for defendants-appellees.

NEARN, Presiding Judge, Western Section.

The Gregorys brought suit against the Jenkins seeking a mandatory injunction requiring the defendants to remove a brick and earthen dam which allegedly interfered with the natural flow of water causing water to back up on plaintiffs' property. After hearing proof, the Chancellor denied plaintiffs relief and plaintiffs have appealed.

The primary issue on appeal is whether the evidence preponderates against the finding of the Chancellor that the plaintiffs were not entitled to injunctive relief. We believe it does and therefore, since this review is *de novo*, we must reverse and fashion a decree which we believe the facts warrant. See T.R.A.P. 13(d), *Cultra v. Douglas*, (1969) 60 Tenn.App. 116, 444 S.W.2d 575, *cert. denied*.

Plaintiffs and defendants are backyard to backyard neighbors. Plaintiffs are the owners of the higher ground and defendants are the owners of the lower. Approximately nineteen years prior to trial, plaintiffs and defendants purchased their respective lots. Immediately prior to their purchases, there was what is described in the record as a "pony pond" located at the rear of plaintiffs' lot. Shortly after plaintiffs purchased their lot they filled in the pony pond. Thereafter, for nineteen years prior to this suit, water that came upon plaintiffs' land flowed down to the area of the old pony pond, across the former pond and onto the defendants' land. There is a common chain-link fence separating the parties' properties at the rear. At the time the pond was filled in, plaintiffs also planted a row of pine trees on their side of the line. Those trees have grown over the last nineteen or twenty years and accordingly drop a considerable amount of pine needles.

About one month prior to the filing of the present suit, defendants built a garage at the rear of their property. Finding that the water running from plaintiffs' land endangered a corner of the new garage foundation, defendants did some fill work where the greatest concentration of water from plaintiffs' land came upon their land and erected a dam, two on-edge bricks high, on top of the fill. The result is a dam about ten inches high. Thereafter, rain water backed up on plaintiffs' land causing some damages and the filing of this suit.

The Chancellor was of the opinion that the filling in of the pony pond some nineteen years ago by the plaintiffs interferred with the natural flow of water. That action, plus the failure of the plaintiffs to keep their pine needles away from the chain link fence, was reasoned by the Court to be the cause of the problem. Hence, the Court ruled that plaintiffs had brought it on themselves and were entitled to no relief.

We do not concur in the Chancellor's finding that the filling in of the pond was a material cause of the present problem. The clear preponderance of the proof is that for the last nineteen years plaintiffs have experienced no appreciable water back up problems on their land until the defendants built their garage and dam. In addition, the proof shows that prior to subdivision, the natural flow of the water on the lands was to the pond. The pond was

built only about four years prior to its filling in and it was dug out with a bulldozer at a place where the water naturally flowed across in order that it might be filled with water. Further, the proof shows that the pond had a spillway for overflow water, which plaintiff testified he left alone and did not relocate and which is immediately above the defendants' newly built dam. In *Blackwell v. Butler*, (1978 Tenn.App.W.S.) 582 S.W.2d 760, 764, *cert. denied*, the Court stated:

> All lands are of necessity burdened with the servitude of receiving and discharging all waters which flow down to them from lands on a higher level; and the owner of the lower land is liable for damages when by artificial means he causes the water to overflow the higher lands. (citations omitted)
>
> A landowner, whether in country or city, has an easement for drainage of surface water in its natural flow over the lower land of a neighboring owner; and if the latter places an obstruction of any character upon his land that arrests this drainage and thereby causes injury to the former, an action lies for damages. (citations omitted)
>
> Any substantial or essential interference with the flow, if wrongful, whether attended with actual damage or not, is an actionable nuisance.
>
> A lower riparian proprietor has no right to maintain a dam which will back water upon the upper riparian proprietor land in time of freshets or prevent its flowing therefrom to his injuries though at ordinary stages of water such dam will not occasion any injury. (citations omitted)

Upon the authority of *Blackwell, supra,* we are of the opinion that plaintiffs are entitled to some injunctive relief.

 However, the law is equally insistent that the dominant tenement may not channelize the natural flow of water into a small pathway so that it enters upon the lands of the servient tenement with an unnatural destructive force. See *Tyrus v. Kansas City, Ft. S. & M.R. Co.,* (1905) 114 Tenn. 579, 86 S.W. 1074. The proof is that the plaintiffs have dumped grass clippings along an area of the fence between the parties and has raked and piled up pine needles along that same area. The result of that action is to prevent some of the water from flowing naturally through the chain link fence and to concentrate some water flow into the area of defendants' dam.

 Equity will suffer no wrong without a remedy. Gibson's Suits in Chancery, 6th Ed., § 11. However, he who seeks equity must do equity. Gibson's Suits in Chancery, 6th Ed., § 16. Further, equity is not limited by monetary awards and may act on the person. Gibson's Suits in Chancery, 6th Ed., §§ 10, 12. In so doing it is free to fashion its remedies in order to do complete justice. *Allen v. Baugus,* (1852) 31 Tenn. (1 Swan) 404; *Burem v. Harville,* (1943) 26 Tenn.App. 595, 174 S.W.2d 663, *cert. denied.* Equity delights in complete justice and does not accomplish it by halves. Gibson's Suits in Chancery, 6th Ed., § 15.

 Accordingly, we are of the opinion that an injunction should issue requiring the defendants to remove the recently erected dam which interferes the natural flow of water and that plaintiffs should be enjoined from placing grass clippings, pine needles and other debris that also interfere with the natural flow of water against the chain link fence. Said injunction shall be issued and enforced in the Trial Court.

Costs below and of appeal shall be shared equally by the parties.

Done at Nashville in the two hundred and eighth year of our Independence and in the one hundred and eighty-eighth year of our Statehood.

TOMLIN and CRAWFORD, JJ., concur.