IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 16, 2005 Session

## DAVID MANIS, ET UX., v. KENNETH GIBSON, ET UX.

**Direct Appeal from the Chancery Court for Sevier County**
**No.  02-5-216     Hon. Telford E. Forgety, Jr., Chancellor**

**No. E2005-00007-COA-R3-CV  - FILED MARCH 3, 2006**

In an action for damages caused by flooding, the Trial Court invoked comparative fault, awarded damages, and ordered defendants to correct conditions which caused the flooding.  Both parties appealed.  We affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed, as Modified.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., and SHARON G. LEE, J., joined.

Jerry K.  Galyon, Sevierville, Tennessee, for appellants.

Steven E. Marshall, Sevierville, Tennessee, for appellees.

**OPINION**

In this action to abate a nuisance and for damages, the Trial Court awarded plaintiffs damages and both parties have appealed.

The Complaint alleged that plaintiffs and defendants own adjoining property and that defendants constructed a private road on their property through an area of natural drainage adjoining the Plaintiffs' property.  Further, that the road "impeded and/or altered the natural flow of rainwater runoff such that the private road acts as a dam."  The Complaint asserted that in March of 2002 defendants' road caused flooding of plaintiffs' home and garage, resulting in substantial damage to plaintiffs' home and personal property.  The Complaint further charged that the road "constitutes an

ongoing nuisance.", and concluded by asking for damages and abatement of the nuisance.

Defendants, in their Answer, deny the road constituted a nuisance, and as an affirmative defense, asserted plaintiffs contributed to their injuries because they had constructed their home in a "flow zone" and left materials within the "flow zone" that blocked the natural flow of water. Further, defendants asserted that plaintiffs' claim was barred by the statute of limitations and equitable estoppel, and in their Amended Answer specifically pled comparative fault.

Following a trial before the Chancellor, the Chancellor, in his Memorandum Opinion, found that the Defendants' road, the extraordinary flooding, the debris in the defendants' drainage pipe, and the low-lying location of the plaintiffs' property all contributed to the flooding. The Court held that the cause of action was not barred by the statute of limitations or repose, and Ordered the defendants to enlarge the road's drainage pipe and lower its height so that it was below the Plaintiffs' floor level. The Court awarded plaintiffs $15,000.00, plus costs.

The plaintiffs constructed their home in 1987 near the intersection of two streams. One of these streams flows approximately ten to twelve feet behind plaintiffs' home, and the other flows under Sugarloaf Road between the front of plaintiffs' property and through a culvert under the plaintiffs' driveway. Plaintiffs' culvert is approximately 35 feet long and 30 inches in diameter, and the water flows from plaintiffs' culvert into the other stream. Following this intersection, the stream flows through defendants' property along the edge of Sugarloaf Road.

Defendants purchased their property in 1993, and built a driveway over the stream to provide access to their property from Sugarloaf Road (the "Upper Driveway"). They also placed a culvert with a 60-inch diameter (the "60-Inch Culvert") under the Upper Driveway. The inlet of this culvert is six feet downstream from the outlet of plaintiffs' culvert.

Plaintiff testified that in 1994 a heavy rainfall caused water to accumulate on the upstream side of the Upper Driveway and in his yard, but his home was not flooded. He further testified that when he called defendants about the accumulation, defendant or his son came with a backhoe and dug a trench across the Upper Driveway releasing the water. Plaintiff further testified that in 1996 water accumulated on the upstream side of the Upper Driveway and into his yard a second time, and when he called the defendants defendant came with a backhoe and dug a trench across the driveway releasing the water. Defendant testified that he dug a trench across the driveway once prior to 2002, but he could not recall when he did. He admitted that in 1996 plaintiffs asked him to lower the height of the Upper Driveway, but he refused. However, he did add a second culvert, with a 36-inch diameter (the "36-Inch Culvert"), to the Upper Driveway in 1995 or 1996.

In the late nineties, defendants built another driveway across the stream (the "Lower Driveway"). That driveway is about 1,000 feet downstream from the Upper Driveway and covers a culvert with a 48-inch diameter (the "48-Inch Culvert"). In 1999 or 2000, the plaintiffs used railroad ties to built a retaining wall along the stream's shoreline, parallel to the rear of their home.

On Sunday March 17, 2002 water began to accumulate on the upstream side of the Upper Driveway, and plaintiffs called the defendants, and defendant arrived at the Upper Driveway with a backhoe. Defendant testified that he first dug a trench across the driveway, and when he noticed there was no water flowing out of the 60-Inch Culvert, he used the backhoe to remove debris from the culvert's inlet. He further testified this debris included landscape timbers, railroad ties, barrels, a truck tire, and plywood, and that when he removed the debris, the water receded in ten minutes. The damage to plaintiffs' property resulting from this flooding forms the basis for plaintiffs' cause of action.

A non-jury case is subject to *de novo* review based upon the record of the proceedings below. *Keaton v. Hancock County Bd. of Educ.*, 119 S.W.3d 218, 222 (Tenn. Ct. App. 2003). The Trial Court's findings of fact are presumed correct, unless the evidence preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). This presumption of correctness, however, does not apply to the trial court's conclusions of law. *Keaton*, 119 S.W.3d at 222. "However, if the trial judge has not made a specific finding of fact on a particular matter, we will review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness." *Elliott v. Elliott*, 149 S.W.3d 77, 83 (Tenn. Ct. App. 2004). In cases involving comparative fault, the trial court's allocation of fault to the parties is a factual finding enjoying the previously mentioned presumption of correctness. *Varner v. Perryman*, 969 S.W.2d 410, 411 (Tenn. Ct. App. 1997). If the evidence preponderates against the trial court's allocation of fault, appellate courts have the authority to reallocate fault. *Cross v. City of Memphis*, 20 S.W.3d 642, 645 (Tenn. 2000); *Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995).

Defendants argue that the plaintiffs' action is barred by the four-year statute of repose, Tenn. Code Ann. § 28-3-202. There are exceptions to the statute of repose, such as:

> The limitation provided by this part shall not be asserted as a defense by any person in actual possession or the control, as owner, tenant, or otherwise, of such an improvement at the time any deficiency in such an improvement constitutes the proximate cause of the injury or death for which it is proposed to bring an action.

Tenn. Code Ann. § 28-3-205(a) (2005). The improvements to real estate which the Trial Court found caused the plaintiffs' injury are two driveways covering three culverts, which the defendants constructed on their property. Since defendants owned the improvements at the time of the alleged deficiency, § 28-3-205(a) the exception in the statute prevents defendants from relying on the statute of repose. We affirm the Trial Judge's finding that the statute of repose is not a defense to plaintiffs' action.

Next, defendants argue that they are not accountable for any of plaintiffs' damages because the flood resulted from an "Act of God." An "Act of God" is well defined in *Butts v. City of South Fulton*, 565 S.W.2d 879, 882 (Tenn. Ct. App. 1977):

Any misadventure or casualty is said to be caused by the "Act of God" when it happens by the direct, immediate, and exclusive operation of the forces of nature, uncontrolled or uninfluenced by the power of man and without human intervention. It must be of such character that it could not have been prevented or escaped from by any amount of foresight or prudence, or by the aid of any appliances which the situation of the party might reasonably require him to use.

*Id.*; *see also, Zollinger v. Carter*, 837 S.W.2d 613, 615 (Tenn. Ct. App. 1992).

The facts of this case do not fall within the foregoing definition. Defendant Gibson testified he used a backhoe to dig a trench across the Upper Driveway and to remove debris from the inlet of the 60-Inch Culvert. He further testified that following these actions, the water receded after ten minutes. If the flooding was truly an exclusive operation of the forces of nature, uninfluenced by the power of man, Gibson's actions would have had no effect on the water level. The fact the flooding receded soon after Gibson's actions, demonstrates that the Upper Driveway exacerbated the flooding. We affirm the Trial Court's finding that the "Act of God" defense was not applicable.

On the issue of damages, plaintiffs' counsel requested of the Trial Court: "All we're asking is what you think is fair on out-of-pocket expenses, the cost of the labor, and if you find that it's a temporary nuisance, then a decrease in rental value since the time of the flood [in March 2002] to the time of correction." The Plaintiffs offered evidence of the monthly rental value decrease, a decline in the amount of $200.00 from the flooding, and evidence regarding the value of his labor expended to repair the home, and the out-of-pocket expenses. Plaintiffs stated that they spent $32,474.94 renovating their home after the March flood. Plaintiffs admitted that that amount included not only repairs, but also upgrades to the home. The Trial Court found the invoices predating the flood had also inflated their repair estimate, and agreed that the decrease in the property's rental value should be included in the damages, but shortened the relevant time frame to seven weeks during which the Plaintiffs could not reside in their home.

It is clear the Trial Court invoked comparative fault between the parties in arriving at the sum of $15,000.00 he awarded against defendants. The Trial Court concluded that the defendants' Upper Driveway contributed to the March 2002 flood and said:

I'm also going to take into consideration these other factors, the extraordinary nature of the rain, the fact that the house was built in an area that was low-lying. . . I think when the time comes for some appeals court to rule on the issue of whether comparative fault applies in an appropriate nuisance action, I think they're going to say it does.

The plaintiffs argue that comparative fault[1] is inapplicable because the defendants are

---

[1]The phrase "comparative fault" has two meanings, both of which are distinct from "comparative negligence." "Comparative fault" in its general sense means those principles

strictly liable.

In this regard, we have observed: "[O]ne who interferes with the natural current of a stream is responsible absolutely, and without any question of negligence, for damages thereby caused to one who is entitled to have the water flowing in its natural state." *Tenn. Elec. Power Co. V. Robinson*, 8 Tenn. App. 396, 1928 WL 2125, at *2 (Tenn. Ct. App. 1928). It is well settled that 'a wrongful interference with the natural drainage of surface water causing injury to an adjoining landowner constitutes an actionable nuisance.'" *Zollinger v. Carter*, 837 S.W.2d 613, 615 (Tenn. Ct. App. 1992) (quoting *Butts v. City of South Fulton*, 565 S.W.2d 879, 881 (Tenn. Ct. App. 1977)). Prior to Tennessee's adoption of comparative fault, ordinary contributory negligence was not a defense to a nuisance action based upon absolute liability, but the plaintiff's gross negligence could act as a defense based upon "the principle of acceptance of the risk of a known danger." *Llewellyn v. City of Knoxville*, 232 S.W.2d 568, 576 (Tenn. Ct. App. 1950).

In the seminal case abandoning the common-law doctrine of contributory negligence, and adopting comparative fault, the Supreme Court in *McIntyre v. Balentine*, 833 S.W.2d 52, 56 (Tenn. 1992), said: "so long as a plaintiff's negligence remains less than the defendant's negligence the plaintiff may recover; in such a case, plaintiff's damages are to be reduced in proportion to the percentage of the total negligence attributable to the plaintiff." *Id.* at 57. However, the Court went on to emphasize the concept of fault over the concept of negligence by making clear that Tennessee's tort system is "fault-based" and the "49 percent rule" is "compatible with a fault-based tort system." *Id.* The Court described this rule as "more closely linking liability and fault." *Id.* at 58.

With more emphasis on fault than negligence the *McIntyre* Court compared fault rather than limit the system to comparisons of negligence. Fault embraces a broader class of conduct

---

governing the analysis of liability in tort actions. *Owens v. Truckstops of Am.*, 915 S.W.2d 420, 425 n.7 (Tenn. 1996). These are the governing principles adopted by the Tennessee Supreme Court in *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992). The Supreme Court's stated goal in adopting these principles was to "more closely link[] liability and fault." *Id.* at 58. Therefore, comparative fault in its general sense denotes a system "wherein a particular defendant is liable only for the percentage of a plaintiff's damages that are caused by that defendant's fault." *Volz v. Ledes*, 895 S.W.2d 677, 680 (Tenn. 1995).

This system has two main components. The first component is a process in which the defendant's liability for the plaintiff's damages is reduced "in proportion to the percentage of negligence attributed to the plaintiff." *Owens*, 915 S.W.2d at 425 n.7. This component is called "comparative negligence." *Id.* The second component is a subsequent process in which fault is allocated among co-defendants and liability for the plaintiff's damages is apportioned in proportion to the allocation of fault. *Id.* This component is "comparative fault" in its second and more specific sense. *See id.* "The rationale behind this distinction is that negligence is generally the only theory by which the plaintiff's damages can be reduced; whereas, the defendants' liability may be based on theories of liability other than negligence." *Id.*

than does negligence. "Negligence implies a breach of a duty of care, while fault refers merely to an act imposing liability." *McKinnie v. Lundell Mfg. Co.*, 825 F. Supp. 834, 839 (W.D. Tenn 1993) (applying Tennessee law). Therefore, "[t]he comparative fault system's focus on the parties' relative 'fault' avoids the 'apples and oranges' argument," which asserts that a plaintiff's negligent conduct cannot be compared to a defendant's non-negligent, though still tortious, conduct. *Id.*

In *Whitehead v. Toyota Motor Corp.*, 897 S.W.2d 684 (Tenn. 1995), the Tennessee Supreme Court confirmed its intention to compare fault, rather than only negligence, when it applied comparative fault principles to strict products liability. *Id.* at 693. The *Whitehead* Court noted that pre-*McIntyre* case law recognized that "the concept of fault is inherent in the doctrine of strict products liability." *Id.* at 688. This was true despite the fact that strict products liability could be imposed without proof of the manufacturer's negligence. *Id.* The Court further reasoned that because "[t]he conduct that leads to strict products liability involves fault, as the word 'fault' is commonly understood," applying comparative fault principles in strict products liability actions was, "[i]n keeping with [*McIntyre*'s] principle of linking liability with fault." *Id.* at 693.

The *Whitehead* Court's treatment of strict products liability is instructive because such liability is analogous to the absolute liability imposed for interference with the natural drainage of surface water. *Compare Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516, 522 (Tenn. 1973) (discussing strict products liability) *with Tenn. Elec. Power Co.*, 8 Tenn. App. 396, 1928 WL 2125, at *2 (discussing interference with natural drainage).

A nuisance action based upon interference with the natural drainage of surface water is actionable only if the interference is "wrongful" and causes injury to an adjoining land owner. *Zollinger*. *See Talley v. Baker*, 3 Tenn. App. 321, 1926 WL 2057, at *2-3 (Tenn. Ct. App. 1926); *Gregory v. Jenkins*, 665 S.W.2d 397, 399 (Tenn. Ct. App. 1983); *Blackwell v. Butler*, 582 S.W.2d 760, 764 (Tenn. Ct. App. 1978). Thus, a nuisance action based upon a "wrongful" interference with the natural drainage of surface water necessarily involves fault because such an interference is an act violating the plaintiff's property rights and imposing liability upon the defendant. Because such an action necessarily involves fault, applying principles of comparative fault is in keeping with *McIntyre*'s principle of linking liability with fault. We affirm the Trial Judge's applying the principles of comparative fault to this case.

Although the Trial Court did not make any explicit findings as to the allocation of fault, the Court implicitly found that defendants' fault was greater than the plaintiffs' fault, otherwise the Trial Court would not have awarded damages.

When the Trial Court has not made a finding of fact, we are authorized to determine where the preponderance of the evidence lies. *Elliott v. Elliott*, 149 S.W.3d 77, 83 (Tenn. Ct. App. 2004).

Plaintiffs constructed their home on an elevation of 98 plus feet, and the elevation of the stream bed at the junction of the two streams is 90 feet. The elevation of plaintiffs' home was

only 8 plus feet above the stream bed and 10 to 12 feet from the bank, which contrasts with the location of the other homes in the area which were further from the stream and at a higher elevation. We conclude plaintiffs' decision to build their home in close proximity to the stream junction was a failure to exercise reasonable care. Thus, the preponderance of the evidence supports the finding that plaintiffs' placement of their home contributed to their damages.

The record also establishes that the debris, including landscape timbers, railroad ties, barrels, truck tires, and plywood, etc., contributed to the flooding.

The Trial Court made no finding regarding the source of the debris, or whether the emanation of debris from plaintiffs' property would constitute negligence on the part of the plaintiffs. The evidence supports the Trial Court's finding that the debris in the culvert contributed to the flooding. The evidence, however, does not clearly show the source of the debris. The record establishes that any debris which emanated from the plaintiffs' property could only float toward defendants' culvert after the flood waters reached the elevation of the plaintiffs' garage. The preponderance of the evidence establishes that by the time the debris floated away from plaintiffs' property, there was already sufficient debris in the culvert to cause flooding. We conclude that the fault for the effects of the debris in the culvert should rest with the defendants. The defendants had an absolute duty to refrain from wrongful interferences with natural drainage of the surface water, and a component of this absolute duty is the duty to prevent the blockage of a culvert.

A lower landowner . . . is charged with the duty of not placing in a natural drainage, or in a ditch which has been maintained along the course, over and in the place of a natural drainage, any artificial obstruction, and **if he build a structure (such as a bridge) across the drainway, he is charged with the positive and continued duty of providing for the natural passage through such obstruction of the water** which may be reasonably anticipated to drain through that channel.

*Talley v. Baker*, 3 Tenn. App. 321, 1926 WL 2057, at *2-3 (Tenn. Ct. App. 1926) (emphasis added).

The Supreme Court in *Eaton v. McLain,* 891 S.W.2d 587, 592-93 (Tenn. 1994) has provided a non-exclusive list of factors to guide the allocation of fault, and the evidence does not preponderate against the finding that the plaintiffs' placement of their home was negligent and contributed to their damages. A factor which is relevant here is "the extent to which the defendant failed to reasonably utilize an existing opportunity to avoid the injury to the plaintiff". *Eaton*, 592-3.

Defendant admitted that prior to the March flood he knew that debris tended to block the opening of the culvert under the Upper Driveway. He also testified that on one prior occasion he had to dig a trench across the Upper Driveway and remove debris from the culvert to relieve flooding on the plaintiffs' property. He further testified that in 1996 the plaintiffs asked him to lower the height the Upper Driveway, but he refused. The evidence establishes that defendants knew that the Upper Driveway created an increased risk of flooding, but did nothing to correct the problem.

Although plaintiffs share some fault for their injuries, applicable *Eaton* factors weigh heavily against the defendants, and the evidence does not preponderate against the Trial Court's implied factual findings that plaintiffs and defendants were both at fault, but that defendants' fault was greater. From the evidence offered as to damages, taking into account the credibility of the witnesses, the fact that plaintiffs' property was improved by the repairs and other factors, the Trial Court's allocation of fault appears to be roughly 60 percent to defendants and 40 percent to plaintiffs. We cannot say the evidence preponderates against the Trial Court's finding as to damages awarded. Tenn. R. App. P. 13(d). We affirm the award of damages in the amount of $15,000.00 to plaintiffs.

At trial, Mrs. Gibson testified that she and her husband both own the property where the driveways are located, and that she knew that her husband built the Upper Driveway across the stream. Plaintiffs argue the Trial Judge should have imposed judgment against her, because both defendants are owners of the property.

A lower landowner is charged with the duty of not interfering with the natural drainage of surface water. *Talley v. Baker*. A landowner who builds a structure across a natural drain-way is charged with the continuing duty to provide for the natural drainage of surface water through that obstruction. *Id.* Any breach of these duties imposes absolute liability upon the breaching landowner. *Tenn. Elec. Power Co. v. Robinson*, 8 Tenn. App. 396, 1928 WL 2125, at *2 (Tenn. Ct. App. 1928). Both Gibsons owed to plaintiffs a duty to provide for the natural drainage of water through the culverts because of their ownership of the culverts. The Gibsons both breached this duty when water was allowed to accumulate in the plaintiffs' property above the Upper Driveway.

Where the plaintiff's injuries result from the defendants' failure to perform a common duty owed to the plaintiff, the defendants' liability is joint and several. *See Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 87 (Tenn. 2001) ("where the intentional actor and the negligent actor are both named defendants and each are found to be responsible for the plaintiff's injuries, then each defendant will be jointly and severally responsible for the plaintiff's total damages."); *Owens v. Truckstops of Am.*, ("the liability of defendants in the chain of distribution of a product, who are liable under a theory of strict liability, is joint and several."); *Resolution Trust Corp. v. Block*, 924 S.W.2d 354, 357 (Tenn. 1996) (where corporate "officers and directors are found to be liable as the result of their collective breach of fiduciary duty . . . , the liability of the defendants to the corporation is joint and several."). Accordingly, we conclude that both defendants are jointly and severally liable for plaintiffs' damages.

Finally, plaintiffs argue that they should have been awarded damages based upon a permanent nuisance, while defendants argue that the Trial Court erred in issuing a mandatory injunction to modify their culvert.

The issue of whether a nuisance is temporary or permanent is a question of fact. *Caldwell v. Knox Concrete Prods., Inc.*, 391 S.W.2d 5, 11 (Tenn. Ct. App. 1964). "A temporary nuisance is one that can be corrected by the expenditure of labor and money". *Pryor v. Willoughby*,

36 S.W.3d 829, 831 (Tenn. Ct. App. 2000). Also "[w]here the nuisance is temporary, the damages to plaintiffs property are recurrent. . . ." *Caldwell.* A permanent nuisance exists "[w]here an activity or business operation creating the nuisance is of such a character that it will be presumed to continue indefinitely, and is at once productive of all the damage which can ever result from it." *Id.* at 11.

Plaintiffs' expert witness produced a report stating that the nuisance created by the defendants' driveways could be abated by installing culverts 8 ft. in diameter with a minimum slope of 0.8% grade under each driveway. He also testified that if these changes were made, water from the 100 year storm could pass under the defendants' driveway without flooding plaintiffs' home. The Trial Court Ordered defendants to carry out the expert's recommendations. The evidence establishes that if these modifications are made, the danger of flooding will abate. The evidence establishes that if the modifications are not made, flooding could reoccur and plaintiffs would be entitled to recurrent damages. The Trial Court concluded that such relief is not an adequate remedy, and he issued the injunction to correct the condition. *See, Dixon v. City of Nashville,* 203 S.W.2d 178, 182 (Tenn. Ct. App. 1946); *accord Wilson*, 12 Tenn. App. 327, 1930 WL 1703, at *3. We affirm the Trial Court on this issue, because no other adequate relief was available. But defendants accuse the Trial Court of having placed itself in a "supervisory position of the engineering concept design and plans", citing *Butts v. City of South Fulton*, 565 S.W.2d 879 (Tenn. Ct. App. 1977). *Butts* is not applicable. The Trial Court in this case did not order any parties to produce engineering plans for the Court's consideration in fashioning a remedy, and did not place itself in a supervisory position over engineering concepts.

For the foregoing reasons, we affirm the Judgment of the Trial Court, as modified, and remand, with the cost of appeal assessed one-half to David Manis and Tammy Manis, plaintiffs, and one-half to Kenneth Gibson and Sue Gibson, defendants.

_____

HERSCHEL PICKENS FRANKS, P.J.